No. 25-2565

_____

# In the United States Court of Appeals for the Seventh Circuit

_____

WISCONSINITES FOR ALTERNATIVES TO
SMOKING AND TOBACCO, INC., *et al.*,

*Plaintiffs-Appellants*,

v.

DAVID CASEY,

*Defendant-Appellee*.

_____

On Appeal from the U.S. District Court for the Western District of Wisconsin
(Hon. William M. Conley; No. 3:25-cv-00552)

_____

**BRIEF OF PLAINTIFFS-APPELLANTS**

_____

Eric N. Heyer
THOMPSON HINE LLP
1919 M Street, N.W., Suite 700
Washington, D.C.  20036
Phone: 202.331.8800
Fax:  202.331.8330
Eric.Heyer@ThompsonHine.com

*Counsel for Plaintiffs-Appellants*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2565

Short Caption: Wisconsinites for Alternatives to Smoking & Tobacco, Inc., et al. v. David Casey

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

        ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Appellants: Wisconsinites for Alternatives to Smoking and Tobacco, Inc., JHH 5 Brothers, LLC (d/b/a Distro Guys Wholesale), TruVibe Inc. (d/b/a The Supply Plus),

    Johnny Vapes, LLC, Visfot Inc. (d/b/a Nara Smoke Shop), Wages and White Lion Investments, LLC (d/b/a Triton Distribution), Kurt Wylie, & Germaine Carmody

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Thompson Hine LLP; Godfrey & Kahn, S.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)        Identify all its parent corporations, if any; and

            None of the Appellant parties has any parent corporation.

    ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

            No publicly held company owns 10% or more of any Appellant party's stock.

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Eric N. Heyer    Date: September 9, 2025

Attorney's Printed Name:  Eric N. Heyer

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☑  **No** ☐

Address:  Thompson Hine, LLP, 1919 M Street, NW, Suite 700

    Washington, DC 20036

Phone Number:  (202) 263-4128    Fax Number:  (202) 331-8330

E-Mail Address: eric.heyer@thompsonhine.com

rev. 12/19 AK

No. 25-2565

_____

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

_____

WISCONSINITES FOR ALTERNATIVES TO
SMOKING AND TOBACCO, INC., *et al.*,

*Plaintiffs-Appellants*,

v.

DAVID CASEY,

*Defendant-Appellee*.

_____

On Appeal from the U.S. District Court for the Western District of Wisconsin
(Hon. William M. Conley; No. 3:25-cv-00552)

_____

## APPELLANTS' DOCKETING STATEMENT

_____

Eric N. Heyer
THOMPSON HINE LLP
1919 M Street, NW, Suite 700
Washington, DC 20036
Phone: 202.331.8800
Fax: 202.331.8330
Eric.Heyer@ThompsonHine.com

*Counsel for Plaintiffs-Appellants*

Plaintiffs-Appellants Wisconsinites for Alternatives to Smoking and Tobacco, Inc., JHH 5 Brothers, LLC d/b/a Distro Guys Wholesale, TruVibe Inc. d/b/a The Supply Plus, Johnny Vapes, LLC, Visfot Inc. d/b/a Nara Smoke Shop, Wages and White Lion Investments, LLC d/b/a Triton Distribution, Kurt Wylie, and Germaine Carmody respectfully submit their Docketing Statement pursuant to Circuit Rules 3(c)(1) and 28(a).

### 1.    Statement Concerning District Court Jurisdiction

The district court has subject matter jurisdiction over the underlying action pursuant to 28 U.S.C. § 1331. Plaintiffs' verified complaint seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and preliminary and permanent injunctions against Defendant's enforcement of Wisconsin Statutes § 995.15 on the grounds that it is impliedly preempted by a provision of the federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 337(a), and that it violates the Fourteenth Amendment's Equal Protection Clause.

### 2.    Statement Concerning Appellate Court Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1), as this appeal is from the district court's denial of Plaintiffs' motion for a preliminary injunction. The district court issued the underlying order on September 5, 2025, and Plaintiffs filed their notice of appeal of the district court's order on the same date.

### 3.    Information as to Interlocutory Appeal

The district court's order at issue denied Plaintiff's motion for a preliminary injunction that was premised on Plaintiffs' claim that Wisconsin Statutes § 995.15 is impliedly preempted by 21 U.S.C. § 337(a). Plaintiffs did not move for a preliminary injunction on their claim that section 995.15 violates the Fourteenth Amendment's Equal Protection Clause.

### 4.    Prior or Related Appellate Proceedings

There have not been any prior or related appellate proceedings in this case.

### 5.    Identification of Defendant-Appellee in his Official Capacity

The Defendant-Appellee in this case is David Casey, the Secretary of the Wisconsin Department of Revenue, who is sued in his official capacity. Mr. Casey is the current occupant of the office.

### 6.    Inapplicability of Remaining Circuit Rule 3(c)(1) Requirements

The remaining requirements of Circuit Rule 3(c)(1) do not apply to this civil case, as the case does not involve any criminal convictions or prisoners.

Dated: September 9, 2025          Respectfully submitted,

                                  /s/ Eric N. Heyer
                                  Eric N. Heyer
                                  THOMPSON HINE LLP
                                  1919 M Street NW, Suite 700
                                  Washington, DC 20002
                                  Tel: (202) 331-8800
                                  Fax: (202) 331-8330
                                  Eric.Heyer@ThompsonHine.com

                                  *Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2025, I electronically filed the foregoing with the Clerk of Court by using the appellate CM/ECF system. I further certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Eric N. Heyer
Eric N. Heyer

# TABLE OF CONTENTS

REQUEST FOR ORAL ARGUMENT .................................................................xi

INTRODUCTION ................................................................................................1

STATEMENT OF JURISDICTION.......................................................................4

STATEMENT OF THE ISSUES............................................................................4

1.  Whether the district court erred in holding that 21 U.S.C. § 337(a) does not impliedly preempt Wisconsin Statutes § 995.15 and, as a result, in denying Appellants' motion for a preliminary injunction..............................4

2.  Whether this Court should direct the district court to enter an order preliminarily enjoining enforcement of Wisconsin Statutes § 995.15............4

STATEMENT OF THE CASE................................................................................4

A.  ENDS products are a less harmful alternative to traditional cigarettes that the FDA regulates under the FDCA. ........................................................4

B.  The FDA rejected Big Tobacco's attempts to change its enforcement discretion policy for ENDS lacking marketing authorization. .......................9

C.  The Wisconsin Legislature adopted Big Tobacco's proposed enforcement policy for unauthorized ENDS. ................................................11

D.  Section 995.15 threatens the continued existence of the retailer Appellants' businesses and prevents the consumer Appellants from using the ENDS products they prefer.........................................................13

E.  Procedural History………………………………………...…………….. 16

SUMMARY OF THE ARGUMENT ...................................................................16

STANDARD OF REVIEW .................................................................................18

ARGUMENT .......................................................................................................19

I.  Appellants Are Likely to Succeed on the Merits of Their Preemption Claim...............................................................................................................19

A.    Title 21 U.S.C. § 337(a) impliedly preempts state laws that directly or indirectly enforce the FDCA's requirements, and so preempts Wisconsin Statutes § 995.15's directory-related restrictions. ........................................................................20

B.    Title 21 U.S.C. § 387p does not exempt from the operation of 21 U.S.C. § 337(a) state laws that indirectly enforce the TCA's premarket review requirements. ...........................................................25

II.    The Wisconsin Department of Revenue's Enforcement of Section 995.15 Irreparably Harms Appellants. .........................................................42

III.    The Balance of Harms and Public Interest Favor Enjoining Enforcement of Section 995.15. ....................................................................44

CONCLUSION ........................................................................................45

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.C. v. Metro. Sch. Dist. of Martinsville*,
  75 F.4th 760 (7th Cir. 2023) ...................................................................42

*Abramski v. United States*,
  573 U.S. 169 (2014)...............................................................................20

*Am. Civil Liberties Union of Ill. v. Alvarez*,
  679 F.3d 583 (7th Cir. 2012) ...........................................................18, 44

*Anthony v. Country Life Mfg., LLC*,
  No. 02 C 1601, 2002 U.S. Dist. LEXIS 19445 (N.D. Ill. Oct. 7,
  2002) .......................................................................................................23

*Arizona v. United States*,
  567 U.S. 387 (2012)...............................................................32, 34, 36

*Bank One, N.A. v. Gattau*,
  190 F.3d 844 (8th Cir. 1999) ...............................................................44

*Bryant v. Medtronic, Inc.*,
  623 F.3d 1200 (8th Cir. 2010) ........................................................22, 28

*Buckman Co. v. Plaintiffs' Legal Committee*,
  531 U.S. 341 (2001)...........................................................8, 21, 22, 24, 38

*Cannon v. Univ. of Chicago*,
  441 U.S. 677 (1979).............................................................................37

*Christian Legal Soc'y v. Walker*,
  453 F.3d 853 (7th Cir. 2006) ...............................................................18

*Re: Complaint Filed by R.J. Reynolds Tobacco Co. and R.J. Reynolds
  Vapor Co. Concerning Certain Disposable Vaporizer Devices &
  Components & Packaging Thereof*,
  Inv. No. 337-TA-1381, 2023 WL 11932250 (U.S. Intern. Trade
  Com'n Dec. 15, 2023)...................................................................10, 11

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000) ..................................................................................19, 20

*DM Trans, LLC v. Scott*,
  38 F.4th 608 (7th Cir. 2022) ................................................................42

*Farina v. Nokia, Inc.*,
  625 F.3d 97 (3d Cir. 2010) .....................................................32, 34, 39, 40

*Freightliner Corp. v. Myrick*,
  514 U.S. 280 (1995)..............................................................................20, 24

*Galvin v. New York Racing Ass'n*,
  70 F Supp. 2d 163 (E.D.N.Y. 1998) ...................................................42

*GEFT Outdoors, LLC v. City of Westfield*,
  922 F.3d 357 (7th Cir. 2019) ...............................................................18

*Geier v. American Honda Motor Co.*,
  529 U.S. 861, 869 (2000)........................................................32, 35, 36

*Geo Grp., Inc. v. Newsom*,
  50 F.4th 745 (9th Cir. 2022) ...............................................................33

*Grand River Enters. Six Nations v. Knudsen*,
  No. 23-35494, 2024 WL 2992503 (9th Cir. Jun. 14, 2024) ...............23

*Heckler v. Chaney*,
  470 U.S. 821 (1985)..............................................................................8

*Ind. Right to Life Victory Fund v. Morales*,
  112 F.4th 466 (7th Cir. 2024) .............................................................18

*Iowans for Alternatives to Smoking & Tobacco, Inc. v. Iowa Dep't of
  Rev.*,
  781 F. Supp. 3d 724, 2025 U.S. Dist. LEXIS 85732 (S.D. Iowa
  May 2, 2025) (appeal pending)...................................................15, 24

*JCW Invs., Inc. v. Novelty, Inc.*,
  482 F.3d 910 (7th Cir. 2007) ...............................................................19

*Johnson v. C.R. Bard Inc.*,
   No. 19-cv-760-wmc, 2021 U.S. Dist. LEXIS 85960 (W.D. Wis.
   May 5, 2021).................................................................................................9

*Loreto v. Proctor & Gamble Co.*,
   515 Fed. Appx. 576 (6th Cir. 2013)..............................................................22

*MD Mall Assocs. v. CSX Transp., Inc.*,
   715 F.3d 479 (3d Cir. 2013) ........................................................................41

*Miles v. Apex Marine Corp.*,
   498 U.S. 19 (1990).......................................................................................37

*Motor Coach Employees* v. *Lockridge*,
   403 U.S. 274, 91 S. Ct. 1909, 29 L. Ed. 2d 473 (1971) ...............................33

*Mylan Labs, Inc. v. Matkari*,
   7 F.3d 1130 (4th Cir. 1993) ...........................................................................8

*Nat'l Ass'n of Tobacco Outlets, Inc. v. City of Providence*,
   731 F.3d 71 (1st Cir. 2013)...........................................................................31

*Nathan Kimmel v. DowElanco*,
   275 F.3d 1199 (9th Cir. 2002) ......................................................................38

*Nexus Pharms., Inc. v. Central Admixture Pharm. Serv., Inc.*,
   48 F.4th 1040 (9th Cir. 2022) ...................................................................9, 23

*Nken v. Holder*,
   556 U.S. 418 (2009).....................................................................................44

*Pac. Trading Co. v. Wilson & Co.*,
   547 F.2d 367 (7th Cir. 1976) ........................................................................35

*Preston v. Thompson*,
   589 F.2d 300 (7th Cir. 1978) ........................................................................45

*R.J. Reynolds Tobacco Co. v. City of Edina*,
   60 F.4th 1170 (8th Cir. 2021) ..................................................................26, 31

*R.J. Reynolds Tobacco Co. v. Cnty. of Los Angeles*,
   29 F.4th 542 (2022) ...............................................................26, 31, 35, 40

*Regan v. Sioux Honey Ass'n Coop.*,
  921 F. Supp. 2d 938 (E.D. Wis. 2013) ................................................................23

*Roland Mach. Co. v. Dresser Indus., Inc.*,
  749 F.2d 380 (7th Cir. 1984) ................................................................43

*Scanlon v. Medtronic Sofamor Danek USA, Inc.*,
  61 F. Supp. 3d 403 (D. Del. 2014)................................................................28

*Smith v. City of Hammond, Ind.*,
  388 F.3d 304 (7th Cir. 2004) ................................................................43

*South Carolina v. Catawba Indian Tribe*,
  476 U.S. 498 (1986)................................................................37

*Transource Pa., LLC v. Defrank*,
  No. 24-1045, ___ F.4th ___ 2025 U.S. App. LEXIS 22972 (3d Cir.
  Sept. 5, 2025) ................................................................39, 40

*U.S. Smokeless Tobacco Mfg. Co. LLC v. City of New York*,
  708 F.3d 428 (2d Cir. 2013) ................................................................31

*U.S. v. Locke*,
  529 U.S. 89 (2000)................................................................39

*United States v. Iowa*,
  126 F.4th 1334 (8th Cir. 2025), *underlying decision later vacated
  under Munsingwear*, No. 24-2265, 2025 WL 1140834 (8th Cir.
  Apr. 15, 2025)................................................................33

*United States v. Lit Drug Co.*,
  333 F. Supp. 990 (D.N.J. 1971) ................................................................5

*United States v. Menasche*,
  348 U.S. 528 (1955)................................................................37

*VanDerStok v. Garland*,
  633 F. Supp. 3d 847 (N.D. Tex. 2022) ................................................................42

*Vanzant v. Hill's Pet Nutrition Inc.*,
  No. 17 C 2535, 2025 U.S. Dist. LEXIS 12854 (N.D. Ill. Jan. 24,
  2025) ................................................................23

*Vapor Tech. Ass'n v. FDA*,
   977 F.3d 496 (6th Cir. 2020) ...............................................................7

*Whole Woman's Health All. v. Hill*,
   937 F.3d 864 (7th Cir. 2019) ..............................................................45

*Wyeth v. Levine*,
   555 U.S. 555 (2009)............................................................................20

**Statutes**

Consolidated Appropriations Act, 2022,
   Pub. L. 117-103, 136 Stat. 49 (2022) ...................................................6

Food, Drug, and Cosmetic Act,
   Pub. L. No. 75-717, 52 Stat. 1040 (1938) ............................................5

Nutrition Labeling and Education Act,
   Pub. L. 101-535, 104 Stat. 2353 (1990) .............................................31

Family Smoking Prevention and Tobacco Control Act,
   Pub. L. 111 -31 123 Stat. 1776 (2009) .................................5, 6, 27, 33

21 U.S.C. § 321 ........................................................................................6

21 U.S.C. § 331 ................................................................................2, 5, 21

21 U.S.C. § 337 ...............................................................................*passim*

21 U.S.C. § 346a ....................................................................................27

21 U.S.C. § 351 ........................................................................................5

21 U.S.C. § 360 ................................................................................21, 28

21 U.S.C. § 364j .....................................................................................30

21 U.S.C. § 379aa ..................................................................................30

21 U.S.C. § 379aa-1 ...............................................................................30

21 U.S.C. § 379s .....................................................................................30

21 U.S.C. § 379r......................................................................................29

21 U.S.C. § 387a ..................................................................5

21 U.S.C. § 387a-1 .............................................................27

21 U.S.C. § 387b ............................................................2, 6

21 U.S.C. § 387j ..........................................................*passim*

21 U.S.C. § 387p ........................................................*passim*

28 U.S.C. § 1292 ................................................................4

28 U.S.C. § 1331 ................................................................4

Wis. Stat. § 100.20 ...........................................................13

Wis. Stat. § 100.26 ...........................................................13

Wis. Stat. § 995.15 .....................................................*passim*

## Regulations

21 C.F.R. § 210 ..................................................................5

21 C.F.R. § 211 ..................................................................5

21 C.F.R. § 820 ..................................................................5

81 Fed. Reg. 28,974 (May 10, 2016) ..................................6

Wis. Admin. Code § ATCP 90.10(1).................................23

## Other Authorities

H.R. Rep. No. 111-58 (Mar. 2009) ....................................36

Youth Prevention and Tobacco Harm Reduction Act,
    H.R. 1261 (2009) .........................................................36

FDA, Regulatory Procedures Manual, July 2024, Ch. 4 Advisory
    Actions, § 4-1-1, *available at*
    https://www.fda.gov/media/71878/download. ..................34

# <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Federal Rule of Appellate Procedure 34(a) and Circuit Rule 34(f), Appellants respectfully request oral argument and that oral argument be expedited absent an order granting Appellants' motion for an injunction pending appeal. This appeal of the district court's denial of a motion for preliminary injunction raises important legal questions regarding the interpretation and interplay of the implied preemption provision of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 337(a), and the FDCA's preservation, express preemption, and savings clauses applicable to its tobacco product authorities, 21 U.S.C. § 387p, as well as the application of each to a Wisconsin statute that Appellants contend is impliedly preempted. Appellants are also suffering significant and ongoing irreparable harm that threatens the continued existence of several Appellants' businesses. Oral argument would assist the Court in resolving this appeal.

## INTRODUCTION

Plaintiffs-Appellants Wisconsinites for Alternatives to Smoking and Tobacco, Inc., JHH 5 Brothers, LLC d/b/a Distro Guys Wholesale, TruVibe Inc. d/b/a The Supply Plus, Johnny Vapes, LLC, Visfot Inc. d/b/a Nara Smoke Shop, Wages and White Lion Investments, LLC d/b/a Triton Distribution, Kurt Wylie, and Germaine Carmody are a Wisconsin non-profit corporation and its members that are distributors, wholesalers, and retailers of electronic nicotine delivery system ("ENDS") products, as well as a manufacturer and individual users of ENDS products. ENDS, also known as electronic cigarettes, are alternatives to traditional cigarettes that are less harmful because they do not contain tobacco, involve combustion, or generate smoke, tar, or ash.

ENDS products are subject to federal regulation by the Food and Drug Administration ("FDA") under the Family Smoking Prevention and Tobacco Control Act ("TCA"), which is codified as subchapter IX of the Food, Drug, and Cosmetic Act ("FDCA"). Another provision found in subchapter III of the FDCA provides that "all proceedings . . . for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States." 21 U.S.C. § 337(a). Among the FDCA's requirements for ENDS is that they are subject to premarket review through the FDA's premarket tobacco product application process under 21

U.S.C. § 387j. ENDS products sold in interstate commerce without FDA premarket authorization are considered "adulterated" and their sale is prohibited. 21 U.S.C. §§ 387b(6)(A); 331. However, as explained herein, because of Congress's competing objectives in enacting the TCA, FDA has exercised enforcement discretion with respect to certain ENDS products and has not required their removal from the market despite their lack of an FDA marketing order.

In late 2023, the Wisconsin legislature enacted Wisconsin Statutes § 995.15. Section 995.15 requires the Wisconsin Department of Revenue ("WDOR") to create a directory of ENDS products that may be lawfully sold in the state. Section 995.15 cross-references, depends on, and incorporates 21 U.S.C. § 387j, the premarket review provision of the FDCA for tobacco products. For a particular ENDS product to be eligible for listing on the directory, a manufacturer must be in either partial or full compliance with the FDCA's premarket authorization requirements for that product. Manufacturers and retailers that sell ENDS products not included in the WDOR directory are subject to substantial civil penalties, seizure of unauthorized products, and potential civil suits from competitors for deceptive trade practices, including potential double damages and attorneys' fees.

The business Appellants sell ENDS products that cannot qualify for listing on the WDOR directory because the criteria set forth in section 995.15 do not account for FDA's decision not to enforce against those products that lack FDA marketing

authorization. Enforcement of section 995.15 commenced on September 1, 2025. Appellants filed a motion to preliminarily enjoin enforcement of section 995.15, but the district court denied the motion on September 5, 2025, concluding that 21 U.S.C. § 337(a) does not impliedly preempt section 995.15.

As explained herein, the district court erred as a matter of law. The district court erred in interpreting the TCA's preservation clause found in 21 U.S.C. § 387p(a)(1) that allows state sales restrictions that are "in addition to, or more stringent than" requirements under the TCA to mean that Congress intended the states to have "authority to enact and enforce laws restricting the sale of tobacco products that rely in part on TCA requirements." J.A  1107. Wisconsin Statutes § 995.15 compels compliance with the TCA's premarket review requirements. It thus presents an obstacle to FDA's balancing and accomplishment of Congress's competing purposes in enacting the TCA—including Congress's grant of flexible enforcement authority to best promote the public health. For these reasons, section 995.15 is impliedly preempted by 21 U.S.C. § 337(a) and Appellants have a strong likelihood of success on the merits of their implied preemption claim.

Moreover, as the district court properly found, Appellants are likely to suffer—and, indeed, are already suffering—substantial irreparable harm from enforcement of section 995.15, including lost business revenues and profits for which sovereign immunity makes damages unavailable. And, because Appellants

3

are likely to succeed on their claim that section 995.15 is preempted, the balance of harms and the public interest also weigh in favor of a preliminary injunction. This Court should vacate the district court's order and direct the district court to enter an order preliminarily enjoining enforcement of Section 995.15.

## STATEMENT OF JURISDICTION

The district court has jurisdiction pursuant to 28 U.S.C. § 1331. Appellants assert a claim based on the Supremacy Clause, U.S. Const., art. VI, cl. 2. Because the district court denied Appellants' motion for a preliminary injunction on September 5, 2025, and Appellants noticed their appeal on the same day, this Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES

1.    Whether the district court erred in holding that 21 U.S.C. § 337(a) does not impliedly preempt Wisconsin Statutes § 995.15 and, as a result, in denying Appellants' motion for a preliminary injunction.

2.    Whether this Court should direct the district court to enter an order preliminarily enjoining enforcement of Wisconsin Statutes § 995.15.

## STATEMENT OF THE CASE

**A.    ENDS products are a less harmful alternative to traditional cigarettes that the FDA regulates under the FDCA.**

Electronic nicotine delivery system products heat a solution containing nicotine into an aerosol that the user inhales. J.A. 239-40. Unlike traditional

cigarettes, ENDS do not contain any tobacco leaf, do not rely on combustion, and do not generate smoke. J.A. 240. The FDA has recognized that ENDS are likely to have fewer and lower concentrations of harmful constituents than traditional cigarettes, with less attendant risk of tobacco-related disease, and that many adults have successfully used ENDS to quit smoking. J.A. 241.

Congress enacted the FDCA in 1938 "to prohibit the movement in interstate commerce of adulterated and misbranded food, drugs, [medical] devices, and cosmetics." Pub. L. No. 75-717, 52 Stat. 1040 (1938).[1] In 2009, Congress enacted the TCA, amending the FDCA to prohibit the movement in interstate commerce of certain adulterated and misbranded tobacco products, including traditional (combustible) cigarettes. *See* 21 U.S.C. § 331 (prohibiting the "introduction into interstate commerce of any food, drug, device, *tobacco product*, or cosmetic that is adulterated or misbranded") (emphasis added); 21 U.S.C. § 387a(b) (limiting the FDA's authority over tobacco products to, *inter alia*, cigarettes). One of Congress's stated purposes in enacting the TCA was to reduce serious tobacco-related disease and death—primarily caused by combustible cigarettes. *See* TCA, § 3(9), 123 Stat.

---

[1] The FDCA defines the terms "adulterated" and "misbranded." 21 U.S.C. § 351(a)(2)(B) & (h), 21 C.F.R. pts. 210, 211, and 820. For example, a drug or medical device is "adulterated" if it is manufactured in a facility that does not fully comply with the FDA's current good manufacturing practice regulations, even if the failure to comply with those regulations has no adverse effect on the product. *United States v. Lit Drug Co.*, 333 F. Supp. 990, 998 (D.N.J. 1971).

1776, 1782 (2009).[2] Another of Congress's stated purposes was to "provide new and flexible enforcement authority to ensure that there is effective oversight of the tobacco industry's efforts to develop, introduce, and promote less harmful tobacco products." TCA, § 3(4), 123 Stat. at 1782.

In 2016, the FDA adopted a regulation that extended the agency's authority over tobacco products to ENDS products containing tobacco-derived nicotine. *See* 81 Fed. Reg. 28,974 (May 10, 2016). In April 2022, Congress further extended this authority to ENDS products containing non-tobacco-derived nicotine.[3]

When ENDS containing tobacco-derived nicotine became subject to the FDCA in August 2016, they automatically became "adulterated" tobacco products until the manufacturer obtained FDA marketing authorization through the premarket

---

[2] Among its findings supporting enactment of the TCA, Congress found that "approximately 8,600,000 Americans have chronic illnesses related to smoking." TCA, § 2(13), 123 Stat. at 1777. Those chronic illnesses include "cancer, heart disease, and other serious adverse health effects." TCA, § 2(2), 123 Stat. at 1777. Congress also found that reducing the use of tobacco by minors by 50 percent would prevent "over 10,000,000 of today's children from becoming regular, daily smokers," would save "over 3,000,000 of them from premature death due to tobacco-induced disease" and that "such a reduction in youth smoking would also result in approximately $75,000,000,000 in savings attributable to reduced healthcare costs." TCA, § 2(14), 123 Stat. at 1777. Congress also found that "because the only known safe alternative to smoking is cessation, interventions should target all smokers to help them quit completely." TCA, § 2(34), 123 Stat. at 1779.

[3] *See* Consolidated Appropriations Act, 2022, Pub. L. 117-103, 136 Stat. 49, Division P, Title I, Subtitle B, §111(a) (amending the definition of "tobacco product" in 21 U.S.C. § 321(rr)(1) to include products containing nicotine "from any source").

tobacco application ("PMTA") process. 21 U.S.C. §§ 387b(6)(A), 387j(a)(2)(A). The same was true for ENDS containing non-tobacco-derived nicotine in April 2022.

However, there were already many ENDS with tobacco-derived nicotine on the market by August 2016; likewise, there was a very large number of ENDS with non-tobacco-derived nicotine on the market by April 2022. J.A. 240. The FDA recognized that immediately forcing all unauthorized ENDS off the market while manufacturers go through the PMTA process could result in many ENDS users reverting to traditional cigarettes. *See Vapor Tech. Ass'n v. FDA*, 977 F.3d 496, 499 (6th Cir. 2020) (noting the FDA's view that removing all unauthorized ENDS from the market too quickly "creates a genuine risk of migration from potentially less harmful [e-cigarette] products back to combustible tobacco products," and that this would be a "public health outcome that should be avoided if at all possible"). Such an outcome would have been contrary to Congress's directive to reduce the instances of disease and death resulting from the use of traditional tobacco products and to provide flexible enforcement authority to effectively oversee the introduction and promotion of less harmful alternatives. Therefore, "[t]hrough enforcement [discretion] policies that FDA has revised over time, the agency has sought to strike a balance between the serious risk that e-cigarettes pose to youth and their potential benefit in helping adult smokers completely transition from or significantly reduce smoking combustible cigarettes." J.A. 0051.

Since September 2021, the FDA's policy with respect to unauthorized ENDS has been to exercise enforcement discretion on a "case-by-case" basis, citing its authority to do so under the Supreme Court's *Heckler v. Chaney* decision. 470 U.S. 821 (1985). J.A. 98, 162, 243, 694. In exercising its enforcement discretion, the FDA says it "is continuously evaluating new information and adjusting its enforcement priorities in light of the best available data," and that it "will take appropriate action regarding [ENDS] that are marketed without premarket authorization as warranted based on changed circumstances, new information, or to better address minors' use of those products." J.A. 694.

Since 1938, the FDCA has always included a provision specifying that *only* the Federal Government can enforce the Act. *See* 21 U.S.C. § 337(a) (stating that "all such proceedings for the enforcement, or to restrain violations, of this [Act] shall be by and in the name of the United States"). Because the FDCA gives the federal government the exclusive authority to enforce the Act, the Supreme Court and other federal courts have rejected attempts by other parties to challenge an FDA decision to *not* enforce provisions of the Act. *See, e.g.*, *Heckler*, 470 U.S. at 835 (stating that the FDCA's enforcement provisions "commit complete discretion to [the FDA] to decide how and when they should be exercised"). And the Supreme Court and other courts, including courts in this Circuit, have held that 21 U.S.C. § 337(a) impliedly preempts any claim that seeks to directly or indirectly enforce the Act. *See, e.g.*,

*Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001); *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993) (dismissing Lanham Act claim against drug manufacturer as impliedly preempted under section 337(a)); *Nexus Pharms., Inc. v. Central Admixture Pharm. Serv., Inc.*, 48 F.4th 1040, 1048 (9th Cir. 2022) ("The statutory prohibition on private enforcement gives the FDA discretion to temper enforcement or not to enforce in circumstances it deems appropriate. If state law facilitates enforcement beyond what the FDA has deemed appropriate, then state law claims may indeed 'stand as an obstacle' to FDA's enforcement discretion."); *Johnson v. C.R. Bard Inc.*, No. 19-cv-760-wmc, 2021 U.S. Dist. LEXIS 85960, *32 (W.D. Wis. May 5, 2021) (finding that a negligence per se claim alleging a violation of the FDCA is impliedly preempted by section 337(a) because the claim "exist[ed] solely by virtue of FDCA requirements").

## B.  The FDA rejected Big Tobacco's attempts to change its enforcement discretion policy for ENDS lacking marketing authorization.

Evidently unsatisfied with how the FDA has exercised its enforcement authority over ENDS—which compete with their traditional cigarette products— "Big Tobacco" companies like R.J. Reynolds (maker of Camel and Lucky Strike brand cigarettes) and Altria (maker of Marlboro and Virginia Slims brand cigarettes) have encouraged the FDA to deviate from its case-by-case discretionary enforcement policy. J.A. 240. R.J. Reynolds filed a citizen petition with the FDA in February 2023 requesting that the agency "adopt a new enforcement" policy because the FDA "was

not [doing] enough" to prevent underage use of unauthorized ENDS. J.A. 141-49. The FDA denied Reynolds' citizen petition in November 2023. J.A. 155-64. In so doing, the FDA told Reynolds: "[W]e do not agree that FDA has taken insufficient compliance and enforcement action against illegally marketed ENDS products . . . To the contrary, we believe that FDA's comprehensive approach to this matter demonstrates the Agency's robust commitment to implementing and enforcing the law . . . and preventing their access to and promotion of use by youth." J.A. 158. The FDA also stated that it "is continuously evaluating new information and, in making enforcement decisions, taking into account data on youth use and other risk factors." J.A. 162.

While its citizen petition was pending, Reynolds also filed a complaint at the United States International Trade Commission ("ITC") seeking to, *inter alia*, bar the importation of many of the same products that Reynolds asked the FDA to target via its citizen petition.[4]

In response, the FDA sent a letter to the ITC urging it to reject Reynolds' attempt to use the ITC to enforce the FDCA. J.A. 49-55. Citing 21 U.S.C. § 337(a), the FDA noted that Congress wants "decisions about the regulatory or compliance

---

[4] *See Re: Complaint Filed by R.J. Reynolds Tobacco Co. and R.J. Reynolds Vapor Co. Concerning Certain Disposable Vaporizer Devices & Components & Packaging Thereof*, Inv. No. 337-TA-1381, 2023 WL 11932250, at *1 (U.S. Intern. Trade Com'n Dec. 15, 2023).

status of tobacco products and what products should be prioritized for enforcement [to] reflect the views of the agency charged with administering the FDCA." J.A. 52. The FDA also noted that 21 U.S.C. § 337(a) reflects congressional intent to have "uniform administration of the FDCA." *Id.*

Based in part on the FDA's letter, the ITC dismissed Reynolds' claim seeking to bar the importation of unauthorized ENDS. *See* Inv. No. 337-TA-1381, 2023 WL 11932250, at *1 (stating "the Commission agrees with FDA"). The ITC reasoned that "it would usurp the FDA's authority to enforce the FDCA and impermissibly grant a private right of action to enforce the FDCA if the Commission were to institute an investigation based on the Reynolds complaint." *Id.* at *2.

## C. The Wisconsin Legislature adopted Big Tobacco's proposed enforcement policy for unauthorized ENDS.

In November 2023, the Wisconsin legislature passed Senate Bill 268, and the Governor signed the bill into law on December 6, 2023. Section 64a of Senate Bill 268, which is codified at Wisconsin Statutes § 995.15, directs the Wisconsin Department of Revenue to do, in effect, what Reynolds asked the FDA to do via its March 2023 citizen petition and what Reynolds asked the ITC to do via its October 2023 complaint—*i.e.*, take enforcement action against persons selling ENDS that have not been authorized by the FDA unless the product was on the market by August 8, 2016, and the product has a pending PMTA that was filed by September 9, 2020.

Section 995.15 requires the WDOR to establish and publish a directory of ENDS products by September 1, 2025, and to update that directory at least monthly. Wis. Stat. § 995.15(6). WDOR published the directory on August 1, 2025. J.A. 825, 889, 893-96. For an ENDS product to qualify for the directory, the product's manufacturer must certify that it agrees to comply with section 995.15's restrictions and either (1) that the manufacturer's product "has received a marketing authorization or similar order for the electronic vaping device from [FDA] pursuant to 21 U.S.C. § 387j," or (2) that the manufacturer's product was marketed in the United States by August 8, 2016, the manufacturer submitted a PMTA for the product to FDA by September 9, 2020, "and either the application remains under review by the [FDA] or a final decision on the application has not otherwise taken effect." Wis. Stat. § 995.15(2).[5] Manufacturers must notify the WDOR of any material change to the information contained in their certifications, including "the issuance or denial of a marketing authorization or similar order by the [FDA] pursuant to 21 U.S.C. § 387j . . . or any other order or action by the [FDA] that affects the ability of the electronic vaping device to be introduced or delivered into interstate commerce for commercial distribution in the United States." Wis. Stat. § 995.15(5).

---

[5] Copies of documentation issued by and/or submitted to the FDA must be included with the manufacturer's initial and annual certifications. Wis. Stat. § 995.15(4).

As of September 1, 2025, retailers and manufacturers are prohibited from selling any ENDS products not listed in the directory. Wis. Stat. § 995.15(9)(a), (b). Businesses that sell ENDS products not listed in the directory are subject to forfeiture penalties of $1,000 per day per product and seizure of the unauthorized products as "contraband." Wis. Stat. §§ 995.15(9)(a)-(b), (11)(a). Because section 995.15 designates repeated sales of unauthorized ENDS products a deceptive trade practice, competitors can also file suit against violators for double damages and attorneys' fees. Wis. Stat. § 995.15(9)(c); Wis. Stat. § 100.20(2)-(4), (5). The deceptive trade practice designation also potentially subjects sellers of unauthorized ENDS products to civil penalties of up to $10,000 per violation. Wis. Stat. § 100.26(6).

**D.    Section 995.15 threatens the continued existence of the retailer Appellants' businesses and prevents the consumer Appellants from using the ENDS products they prefer.**

Appellants include distributors and retailers of ENDS products, as well as individual users of ENDS products. J.A. 236-38. Now that the September 1, 2025 enforcement date has passed, if the business Appellants continue to sell ENDS products not listed in the new directory, they will be subject to the above-mentioned litany of penalties. Enforcement of section 995.15 also means that the consumer Appellants, Kurt Wylie, and Germaine Carmody, will not have access to the ENDS products upon which they rely to keep from reverting to more dangerous traditional

cigarettes. J.A. 13, 209, 231, 241. And if the retailer Appellants remove ENDS products not listed on the directory from their shelves for a prolonged period of time, they will go out of business. J.A. 254-66, 869-96, 1130-33.

The district court recognized that enforcement of Section 995.15 will "significantly limit the ability for businesses to operate gainfully and consumers to get ENDS products of their choice." App.A. 20-21. The district court found that "switching to carrying the few industry products that are currently compliant with [section] 995.15 is not feasible." App.A. 21. Sales of the Big Tobacco companies' ENDS products listed on the WDOR's directory are insufficient to prevent Plaintiffs from suffering permanent, irreparable harm to their businesses. J.A. 871-72, 881-82, 889, 1083.

Each Appellant detailed the total revenue it generated from ENDS products listed in the directory prior to enforcement, and no Appellant generated more than 9.6% of its revenues from such products. J.A. 871-72, 881-82, 889, 898. Indeed, the drastic reductions in sales revenues that Appellants predicted before enforcement started on September 1, 2025, have now been realized. After it removed non-listed ENDS products from its shelves, Appellant Johnny Vapes' daily revenues in the week prior to the start of enforcement fell from a low of $13,408.28 to a *high* of $2,815.50. J.A. 1131. During the week prior to the start of enforcement, Appellant The Supply Plus's sales generated $159,843.36 in revenue, with 3,184 customers

14

making purchases in its stores. J.A. 1132-33. During the week of September 1-7, 2025, those figures dropped to $37,642.79 in revenue and only 1,277 customers. J.A. 1133.

The losses in revenue and profits resulting from the WDOR's enforcement of section 995.15's restrictions will force the retailer Appellants to close many if not all of their brick-and-mortar shops that they own and operate in Wisconsin. J.A. 1131, 1133. Enforcement of section 995.15 threatens the very existence of the business Appellants' businesses, and this harm is both ongoing and irreparable.

## E.    Procedural History

On June 30, 2025, Appellants filed a complaint in the district court seeking a declaratory judgment that section 995.15 violates the United States Constitution's Supremacy Clause and both preliminary and permanent injunctions against the law's enforcement. On July 8, 2025, Appellants filed their motion for a preliminary injunction. J.A. 196-98.

The district court denied Appellants' motion on September 5, 2025. App.A. 20-22; J.A. 1089-1110. The district court based its denial of Appellants' motion on its conclusion  that Wisconsin Statutes § 995.15 is not impliedly preempted by 21 U.S.C. § 337(a) and, therefore, Appellants did not have a strong likelihood of success on the merits. App.A. 22.

Appellants filed their notice of appeal on September 5, 2025. J.A. 1110. The district court's holding that section 995.15 is not preempted by 21 U.S.C. § 387j is squarely at odds with another recent district court decision concluding that a virtually identical Iowa statute was so preempted. *See Iowans for Alternatives to Smoking & Tobacco, Inc. v. Iowa Dep't of Rev.*, 781 F. Supp. 3d 724, 2025 U.S. Dist. LEXIS 85732 (S.D. Iowa May 2, 2025) (appeal pending).

For the reasons detailed below, the district court erred as a matter of law. This Court should vacate the district court's order and direct the district court to preliminarily enjoin section 995.15's directory-related restrictions.

## SUMMARY OF THE ARGUMENT

Appellants are likely to succeed on the merits of their implied preemption claim. Section 995.15 conflicts with, and is preempted by, the exclusive discretion Congress granted the FDA in 21 U.S.C. § 337(a) to enforce (or not) the premarket authorization requirements established in 21 U.S.C. § 387j. Section 995.15 is not protected from a finding of implied preemption by the TCA's preservation and savings clauses in 21 U.S.C. § 387p because section 995.15 compels partial or full compliance with the premarket review requirements of 21 U.S.C. § 387j. Premarket review is a "critical element" of eligibility for listing on the WDOR's directory; unless a manufacturer submits a premarket application for it to FDA, an ENDS product is ineligible for listing on the directory, and thus for sale in Wisconsin.

16

Contrary to the district court's conclusions, the text, structure, and legislative history of the FDCA and TCA suggest that Congress did not intend the TCA's preservation and savings clauses found in 21 U.S.C. § 387p to allow states to "enact and enforce the same" requirements as the TCA, App.A. 16, thereby rendering 21 U.S.C. § 337(a) inapplicable to FDA's tobacco authorities.

Appellants are also suffering substantial ongoing irreparable harm from the threatened enforcement of section 995.15. As the district court found, enforcement of section 995.15 would "significantly limit the ability for businesses to operate gainfully and consumers to get ENDS products of their choice," and "switching to carrying the few industry products that are currently compliant with [section] 995.15 is not feasible." App.A. 21. These monetary losses, which put at risk the very existence of the retailer plaintiffs' businesses, will not be compensable because "[D]efendant[-Appellee], a Wisconsin state agency, is immune from claims for money damages under the doctrine of sovereign immunity." App.A. 21.

Finally, because of the strength of Appellants' claim that section 995.15 is impliedly preempted and the irreparable harm they are suffering, the "merged" factors of the balance of equities and the public interest also weigh strongly in favor of a preliminary injunction.

## STANDARD OF REVIEW

A plaintiff seeking a preliminary injunction must "carry the burden of demonstrating a likelihood of success on the merits and a likelihood of 'irreparable harm in the absence of preliminary relief.' [A plaintiff] must also ultimately convince us that the balance of equitable interests tips in favor of injunctive relief." *Ind. Right to Life Victory Fund v. Morales*, 112 F.4th 466, 471 (7th Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). "This latter inquiry requires us to consider both 'the public interest' as well as the 'competing harms' that would flow to the parties from a grant or denial of the requested injunction." *Id.* (quoting *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013)). "This Circuit 'employs a sliding scale approach' for this balancing: if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (quoting *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018)).

"On a review of the district court's denial of a preliminary injunction, legal conclusions are reviewed de novo, findings of historical or evidentiary fact for clear error, and the balancing of the injunction factors for an abuse of discretion." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). When a district

court has improperly denied a motion for a preliminary injunction, this Court has the power to vacate and remand a denial of a preliminary injunction with specific instructions for the district court to enter an injunction. *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 608 (7th Cir. 2012). "Whether federal law preempts state law is a question [the Seventh Circuit] review[s] *de novo*." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 917 (7th Cir. 2007).

## ARGUMENT

### I.    Appellants Are Likely to Succeed on the Merits of Their Preemption Claim.

Appellants are likely to succeed on the merits of their claim that 21 U.S.C. § 337(a) impliedly preempts Wisconsin Statutes § 995.15's directory-related restrictions. Contrary to the district court's conclusions, the text, structure, and legislative history of the FDCA suggest that Congress did not intend the TCA's preservation and savings clauses found in 21 U.S.C. § 387p to allow States to enact and enforce requirements that cross-reference, and thus are parasitic on, the TCA's requirements. Because section 995.15 explicitly incorporates by reference and compels compliance with the TCA's premarket review requirements found in 21 U.S.C. § 387j, section 995.15's directory-related restrictions are preempted.

"A fundamental principle of the Constitution is that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) (citing U.S. Const., art. VI, cl. 2). As relevant here, "state law is naturally

19

preempted to the extent of any conflict with a federal statute." *Id*. at 372. This "implied conflict preemption" occurs where, *inter alia*, "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

"[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). To determine the intent of Congress, courts must examine "the federal statute as a whole and identify[] its purpose and intended effects." *Crosby*, 530 U.S. at 373; *accord Abramski v. United States*, 573 U.S. 169, 179 (2014) (noting that, in statutory interpretation, a court "must (as usual) interpret the relevant words not in a vacuum, but with reference to the statutory context, structure, history and purpose" (cleaned up)). Here, such a textual and structural analysis supports the conclusion that Congress intended section 337(a) to preempt state laws that, like section 995.15, incorporate by reference, and thus indirectly enforce, the TCA's requirements.

> **A.    Title 21 U.S.C. § 337(a) impliedly preempts state laws that directly or indirectly enforce the FDCA's requirements, and so preempts Wisconsin Statutes § 995.15's directory-related restrictions.**

Through its enactment of 21 U.S.C. § 337(a), Congress expressed its intent for the federal government to have the sole authority to enforce the FDCA's tobacco, drug, medical device, and cosmetic provisions. *See* 21 U.S.C. § 337(a) ("Except as

provided in subsection (b), all such proceedings for the enforcement, or to restrain violations, of this [Act] shall be by and in the name of the United States.").

Because the Federal Government has the exclusive authority to enforce the FDCA, the Supreme Court has held that state law may not encroach on the FDA's enforcement discretion. *See Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 349 n.4 (2001) (stating that "the FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with the [Act]") (citing 21 U.S.C. § 337(a)). State laws and state-law claims that do so are impliedly preempted.

In *Buckman*, plaintiffs alleged they suffered personal injuries caused by defective FDA-cleared medical devices. The plaintiffs' claims included state-law fraud claims based on an allegation that the defendant had obtained FDA clearance of the devices by submitting false reports to the FDA.[6] The Court held that the plaintiffs' state-law claims "conflict[ed] with" and were "therefore impliedly preempted by" the FDCA. 531 U.S. at 348.

The Court noted that the "conflict stem[med] from the fact that the federal statutory scheme amply empowers the FDA to punish and deter fraud against the agency," that "this authority is used by the Administration to achieve a somewhat

---

[6] The FDCA prohibits the submission of such false reports. *See* 21 U.S.C. § 331(q)(2); *see also* 21 U.S.C. § 360(k) (discussing required reports for devices).

delicate balance of statutory objectives," and that such a balance could "be skewed by" the plaintiffs' claims. *Id*. In other words, the FDA "has at its disposal a variety of enforcement options," including "seeking injunctive relief and civil penalties, seizing the [products], and pursuing criminal prosecutions," that "allow the agency to make a measured response to suspected" violations of the FDCA. *Id*. at 349 (cleaned up). The FDA may also choose not to enforce certain violations of the FDCA.

The Court also explained why plaintiffs could not circumvent implied preemption by styling their claims as state-law claims. Unlike "traditional state tort law [claims] which had predated the federal enactments in question[]," plaintiffs' "claims exist[ed] solely by virtue of the FDCA." 531 U.S. at 353. In short, "the existence of [the FDCA]" was "a critical element in [plaintiffs'] case." *Id*. Finally, the Court concluded that for "the reasons stated above," plaintiffs' claims "would exert an extraneous pull on the scheme established by Congress, and [those claims were] therefore preempted by that scheme." 531 U.S. at 353.

Since *Buckman*, federal courts, including district courts in this Circuit, have routinely held that section 337(a) impliedly preempts both federal and state law claims that would not exist but for the existence of the FDCA.[7] These circumstances

---

[7] *See*, *e.g.*, *Bryant v. Medtronic, Inc.*, 623 F.3d 1200, 1205 (8th Cir. 2010) (holding section 337(a) preempted state law claim that was based on manufacturer's failure to file reports with the FDA in accordance with FDA regulations; "these claims are

include situations where a state statute or regulation itself references a provision of

the FDCA.[8] And section 337(a) need not be wielded solely as a defensive shield; the

Ninth Circuit invoke the statute to issue a preliminary injunction against a state

attorney general's enforcement action because "the claim exist[ed] solely by virtue

---

simply an attempt by private parties to enforce the [FDCA], claims foreclosed by §
337(a) as construed in *Buckman*"); *Loreto v. Proctor & Gamble Co.*, 515 Fed. Appx.
576, 579 (6th Cir. 2013) ("The question, then, is how to determine whether a claim
formally asserted under state law is in substance one seeking to enforce the FDCA.
The Supreme Court supplied the test in *Buckman*: If the claim would not exist in the
absence of the FDCA, it is impliedly preempted."); *Nexus Pharms., Inc. v. Central
Admixture Pharm. Serv., Inc.*, 48 F.4th 1040, 1048 (9th Cir. 2022) ("The statutory
prohibition on private enforcement gives the FDA discretion to temper enforcement
or not to enforce in circumstances it deems appropriate. If state law facilitates
enforcement beyond what the FDA has deemed appropriate, then state law claims
may indeed 'stand as an obstacle' to FDA's enforcement discretion."); *Anthony v.
Country Life Mfg., LLC*, No. 02 C 1601, 2002 U.S. Dist. LEXIS 19445, *8-9 (N.D.
Ill. Oct. 7, 2002) (holding Illinois Consumer Fraud and Deceptive Business Practices
Act premised on claim that defendant placed "adulterated" food products in
commerce that lacked FDA approval of food additives impliedly preempted by
FDCA); *Vanzant v. Hill's Pet Nutrition Inc.*, No. 17 C 2535, 2025 U.S. Dist. LEXIS
12854, *17-23 (N.D. Ill. Jan. 24, 2025) (holding unfair practices claims under
Illinois Consumer Fraud and Deceptive Business Practices Act impliedly preempted
because "Plaintiffs would have no claim under ICFA if the FDCA were never
enacted").

[8] *See*, *e.g.*, *Nexus Pharms.*, 48 F.4th at 1046 (holding that when claims rely "on a
state statute which itself relies on the federal statute," such claims stand as an
obstacle to FDA's enforcement discretion and are impliedly preempted); *Regan v.
Sioux Honey Ass'n Coop.*, 921 F. Supp. 2d 938, 944-45 (E.D. Wis. 2013) (holding
claim that defendant violated Wis. Admin. Code § ATCP 90.10(1) was impliedly
preempted because "a private party cannot attempt to enforce the FDCA under the
guise of state law claims" (cleaned up)).

of the FDCA." *Grand River Enters. Six Nations v. Knudsen*, No. 23-35494, 2024 WL 2992503 (9th Cir. Jun. 14, 2024) (cleaned up).

Appellants are likely to prevail on the merits of their claim that 21 U.S.C. § 337(a) impliedly preempts Wisconsin Statutes § 995.15. The statute "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp.*, 514 U.S. at 287. Through 21 U.S.C. § 337(a), Congress made clear that only the federal government can enforce the FDCA's tobacco provisions, including the premarket authorization requirement established by 21 U.S.C. § 387j for tobacco products. But section 995.15 allows both the WDOR and private competitors to indirectly enforce the TCA's premarket review requirements against manufacturers and sellers of ENDS products that lack premarket authorization and whose products do not qualify for inclusion in the directory as a result.

Just like the preempted state laws in the cases discussed above, "the existence of [the FDCA]" is a "critical element" of section 995.15. *See*, *e.g.*, *Buckman*, 531 U.S. at 353. The "parasitic" nature of section 995.15 is illustrated by the fact that if the FDCA's premarket authorization requirements for ENDS products did not exist, neither could the requirements of section 995.15. *IFAST*, 2025 U.S. Dist. LEXIS 85732 at *35, 38. Because section 995.15 conditions access to the Wisconsin market on either full compliance (i.e., a marketing granted order) or partial compliance (i.e.,

a premarket application submitted to FDA by September 9, 2020, that is still pending) with the FDCA's premarket application requirements, section 995.15 impermissibly seeks to indirectly enforce the Act.

Thus, section 337(a) impliedly preempts the directory-related restrictions set forth in Wisconsin Statutes § 995.15.

### B. Title 21 U.S.C. § 387p does not exempt from the operation of 21 U.S.C. § 337(a) state laws that indirectly enforce the TCA's premarket review requirements.

The TCA's preservation and savings clauses found in 21 U.S.C. § 387p do not exempt from the operation of section 337(a) state laws—like section 995.15—that indirectly enforce the TCA's premarket review requirements.

As codified in the United States Code, the preservation clause states in relevant part that:

> Except as provided in paragraph (2)(A), nothing in this subchapter, or rules promulgated under this subchapter, shall be construed to limit the authority of . . . a State . . . to enact, adopt, promulgate, and enforce any law . . . with respect to tobacco products that is in addition to, or more stringent than, requirements established under this subchapter, including a law . . . relating to or prohibiting the sale, distribution . . . or use of tobacco products by individuals of any age . . . .

21 U.S.C. § 387p(a)(1). There follows an express preemption clause that provides, in relevant part, that:

> No State . . . may establish or continue in effect with respect to a tobacco product any requirement which is different from, or in addition to, any requirement under the provisions of this subchapter relating to . . . premarket review, adulteration, . . . [or] registration.

21 U.S.C. 21 U.S.C. § 387p(a)(2)(A).

Finally, the savings clause provides, in relevant part, that the express preemption clause "does not apply to requirements relating to the sale [or] distribution . . . of tobacco products by individuals of any age." 21 U.S.C. § 387p(a)(2)(B).

The Ninth Circuit has referred to section 387p as a "preservation sandwich" that "reveals a careful balance of power between federal authority and state . . . authority, whereby Congress has allowed the federal government to set the standards regarding how a product would be manufactured and marketed, but has left states . . . the ability to restrict or opt out of that market altogether." *R.J. Reynolds Tobacco Co. v. Cnty. of Los Angeles*, 29 F.4th 542, 555 (2022). As the Ninth Circuit observed, "under the TCA the federal government sets the regulatory floor, [but] the plain text of the preservation clause allows state . . . governments to go beyond that, including even prohibiting the sale . . . of tobacco products [to] individuals of any age." *Id*. at 553 (internal quotation marks omitted).

However, even if correct, these observations say nothing about the relevant inquiry—whether a state may adopt a sales restriction that, rather than merely going beyond an FDCA requirement, actually *incorporates by reference*—and thus indirectly enforces—that very FDCA requirement. As the Eighth Circuit has observed, "[e]ssentially, the Preservation Clause tells us that there is no 'field

preemption' for the TCA." *R.J. Reynolds Tobacco Co. v. City of Edina*, 60 F.4th 1170, 1174 (8th Cir. 2021). But it is implied conflict preemption, not field preemption, that is at issue with respect to section 995.15. For the reasons that follow, the text, structure, and legislative history of the FDCA require the conclusion that states cannot indirectly enforce the TCA's requirements.

**1.**     As codified in the United States Code, the "subchapter" referenced in the opening sentence of section 387(p)(a)(1) is subchapter IX of the FDCA, the TCA's provisions relating to the FDA's regulation of tobacco products.[9] Section 337(a), however, is found in subchapter III of the FDCA. If Congress had intended section 387p to limit the implied preemptive effect of section 337(a), it would not have referenced only the subchapter referencing the FDCA's tobacco provisions, but rather the FDCA in its entirety or some other language to explicitly encompass section 337 in subchapter III. *See, e.g.*, 21 U.S.C. § 346a ("*Nothing in this Act preempts the authority of any State or political subdivision to require that a food containing a pesticide chemical residue bear or be the subject of a warning or other statement relating to the presence of the pesticide chemical residue in or on such food.*") (emphasis added); 21 U.S.C. § 387a-1(a)(1)(A) (providing for the issuance

---

[9] As originally enacted, the Tobacco Control Act used the term "chapter" instead of "subchapter." *See* Pub. L. 111-31, 123 Stat. at 1823. However, "chapter" as used there clearly referenced what was ultimately codified in the United States Code as subchapter IX of Chapter 9 of Title 21. *See* 123 Stat. at 1784 (referencing "Chapter IX—Tobacco Products").

of a final rule "under . . . the Federal Food, Drug, and Cosmetic Act"). The fact that Congress did not do so reflects Congress's intent for section 337(a) to apply equally to the TCA's requirements as to any other provision of the FDCA.

Indeed, cases addressing an express preemption provision similar to that found in section 387p(a)(2)(A) reinforce this conclusion. The TCA's express preemption provision is modeled on the FDCA's express preemption provision for medical devices. *See* 21 U.S.C. § 360(k) (preempting any State or local requirement "which is different from, or in addition to, any requirement applicable under this Act to the device"). And federal "courts have generally agreed that" a state law claim survives preemption under section 360k only if it "is premised on conduct that both (1) violates the FDCA, and (2) *would give rise to recovery under state law even in the absence of the FDCA.*" *Scanlon v. Medtronic Sofamor Danek USA, Inc.*, 61 F. Supp. 3d 403, 411 (D. Del. 2014) (collecting cases and citing, *inter alia*, *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1205 (8th Cir. 2010)) (emphasis added). Section 995.15's directory-related restrictions do not meet that test because they explicitly cross-reference and piggyback on 21 U.S.C. § 387j; section 995.15 could not provide for either a legal duty by a seller of ENDS products or an action against that seller in the absence of the FDCA or section 387j.

In its order denying Appellants' motion, the district court rejected this textual argument by claiming that it "contradicts the Supreme Court's instruction that 'a

28

specific policy embodied in a later federal statute should control [the court's] construction of the [earlier] statute, even though it ha[s] not been expressly amended'" and concluding that section 387p had effectively amended section 337(a). App.A. 12 at n.7 (quoting *United States v. Estate of Romani*, 523 U.S. 517, 530-31 (1998)). But the district court's conclusions conflate two different inquiries. As noted above, even if Congress set up in section 387p a federal "floor" of regulation that states are free to go beyond when regulating ENDS products, it does not follow that the power to *exceed* federal requirements includes the power to *enforce* federal requirements—whether by adopting identical state requirements or, as here, by explicitly incorporating the federal requirements by reference. In concluding that section 387p "allows states to continue or establish requirements that are the same as the TCA," App.A. 18, the district court elided the relevant question that the plain language of section 387p(a)(1) answers—section 337(a)'s prohibition on state enforcement of FDCA requirements is *not* affected by section 387p.

**2.**     Applying a broader lens to the whole of the FDCA also supports this conclusion. When Congress intends to allows states to enforce "identical" requirements to those imposed by the FDCA, Congress has a long history of explicitly stating as much in the Act itself.

By way of example, 21 U.S.C. § 379r(f) provides that "[n]othing in this section shall prevent a State or political subdivision thereof from enforcing, under any relevant civil or other enforcement authority, a requirement that is identical to a requirement of this Act." No such provision referencing state authority to enforce "identical" requirements is found anywhere in the TCA.

Likewise, in other express preemption provisions of the FDCA, Congress repeatedly references state measures that are "different from, in addition to, or *otherwise not identical to*" the FDCA's requirements. *See* 21 U.S.C. §§ 364j(a), 379aa(h)(1), 379aa-1(h)(1), and 379s(a) (emphasis added). In these provisions, "not identical to" signals authorization from Congress for states to adopt state laws that duplicate federal requirements. But the preservation clause found in 21 U.S.C. § 387p merely references requirements that are "in addition to, or more stringent than" the FDCA's requirements. And the express preemption clause likewise includes only "different from, or in addition to," and not "otherwise not identical to."

The omission of "identical to" in section 387p's preservation and express preemption clauses suggests that, instead of intending to allow states to "enact and enforce the same" requirements as those imposed by the FDCA, as the district court concluded, App.A. 16, Congress only intended to allow states to impose requirements that *differ* from those imposed by the FDCA. This is the case even if those different requirements are more stringent or demanding than the FDCA's

requirements (such as local laws prohibiting sales of non-tobacco-flavored tobacco products when the FDCA does not do so[10] or outright bans on sales of categories of tobacco products altogether).

Indeed, historically, when Congress has intended to allow States to enforce the FDCA's requirements directly, it has signaled this by amending 21 U.S.C. § 337 itself. In 1990, Congress amended the FDCA through the Nutrition Labeling and Education Act ("NLEA"). Pub. L. 101-535, 104 Stat. 2353 (1990). The NLEA expanded FDA's authority over food labeling by revising various provisions within Chapter IV of the Act. The NLEA also limited the scope of section 337 by granting states the authority to enforce some of the FDCA's prohibitions on the distribution of "misbranded" food products. But Congress did not adopt that limitation on the scope of section 337 through an amendment to Chapter IV. Instead, it did so by amending section 337 itself to create a new subsection (b) that allows States to bring proceedings to enforce and restrain violations of certain food-related provisions of the FDCA. *See* 104 Stat. at 2362 (creating 21 U.S.C. § 337(b)). Congress did not similarly amend section 337 when it enacted the TCA nineteen years later, which

---

[10] *See R.J. Reynolds Tobacco Co. v. Cnty. of Los Angeles*, 29 F.4th at 549-50 (9th Cir. 2022); *City of Edina*, 60 F.4th 1170; *Nat'l Ass'n of Tobacco Outlets, Inc. v. City of Providence*, 731 F.3d 71 (1st Cir. 2013); *U.S. Smokeless Tobacco Mfg. Co. LLC v. City of New York*, 708 F.3d 428 (2d Cir. 2013) (finding local flavor restrictions not preempted).

31

suggests that Congress intended section 337(a) to prevent states from enforcing the TCA's requirements.

**3.**     "[A] clarification of intent not to preempt some state law is not a statement of intent to permit actual conflicts between state and federal law." *Farina v. Nokia, Inc.*, 625 F.3d 97, 131 (3d Cir. 2010). "The ordinary principles of preemption include the well-settled proposition that a state law is preempted where it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Arizona v. United States*, 567 U.S. 387, 406 (2012) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (2002)). When state law permits "actions that 'actually' conflict' with federal regulations, it would take from those who would enforce a federal law the very ability to achieve the law's congressionally mandated objectives that the Constitution, through the operation of ordinary preemption principles, seeks to protect." *Geier*, 529 U.S. at 872. "To the extent that such an interpretation . . . reads into a particular federal law toleration of a conflict that those principles would otherwise forbid, it permits that law to defeat its own objectives, or potentially, as the [Supreme] Court has put it before, to 'destroy itself.'" *Id.* (quoting *American Telephone & Telegraph Co. v. Central Office Telephone, Inc.*, 524 U.S. 214, 228 (1998)).

When Congress enacted the TCA, it charged the FDA with reducing serious tobacco-related disease and death, which is primarily caused by traditional,

combustible cigarettes. *See* TCA, § 3(9), 123 Stat. at 1782 (stating that one of the purposes of the TCA is "to promote cessation to reduce disease risk and the social costs associated with tobacco-related diseases"). One of the ways Congress identified to reduce such disease and death was to give the FDA "new and *flexible* enforcement authority" over "less harmful tobacco products." TCA, § 3(4), 123 Stat. at 1782 (emphasis added). Section 995.15 conflicts with Congress's intent because it would prohibit the sale of ENDS products that the FDA, in the exercise of its enforcement discretion, may allow to be sold without premarket authorization to benefit public health. *See United States v. Iowa*, 126 F.4th 1334, 1347 (8th Cir. 2025) ("Even accepting Iowa's interpretation, Section 2 is still an obstacle to the exercise of the discretion that Congress gives to federal officials charged with enforcing federal immigration law.") (collecting cases), *underlying decision later vacated under Munsingwear*, No. 24-2265, 2025 WL 1140834 (8th Cir. Apr. 15, 2025); *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 762 (9th Cir. 2022) ("AB 32 frustrates that congressional intent, creating a conflict between [AB 32's] requirement . . . and the action which Congress and the Department [of Homeland Security] have taken to insure the appropriateness of facilities to house detainees. Such interference with the discretion that federal law delegates to federal officials goes to the heart of obstacle preemption.") (cleaned up). "The Supreme Court's preemption case law indicates that regulatory situations in which an agency is required to strike a balance between

competing statutory objectives lend themselves to a finding of conflict preemption." *Farina*, 625 F.3d at 123. Such is the case here.

And, at minimum, the methods of enforcement of section 995.15 and the FDCA differ. *See Arizona v. United States*, 567 U.S. 387, 406 (2012) ("Although § 5(C) attempts to achieve one of the same goals as federal law—the deterrence of unlawful employment—it involves a conflict in the method of enforcement. The [Supreme] Court has recognized that a '[c]onflict in technique can be fully as disruptive to the system Congress erected as conflict in overt policy.'") (quoting *Motor Coach Employees* v. *Lockridge*, 403 U.S. 274, 287, 91 S. Ct. 1909, 29 L. Ed. 2d 473 (1971)). Section 995.15 indirectly enforces 21 U.S.C. § 387j's premarket review requirements by providing the WDOR authority to impose substantial civil penalties against, and seize inventory from, sellers of ENDS products that lack premarket authorization. Section 995.15 also creates an avenue for competing private parties to sue sellers of ENDS products that lack marketing authorization for double damages and attorney's fees. In contrast, the FDA issues warning letters to "give individuals and firms an opportunity to take voluntary and prompt corrective action before [the FDA] initiates an enforcement action," including against sellers of products that lack premarket authorization.[11] And, unlike section 995.15, nothing

---

[11] *See* FDA, Regulatory Procedures Manual, July 2024, Ch. 4 Advisory Actions, § 4-1-1, *available at* https://www.fda.gov/media/71878/download.

in the FDCA permits enforcement of the premarket review requirement by private parties, such as competitors. *Pac. Trading Co. v. Wilson & Co.*, 547 F.2d 367, 370 (7th Cir. 1976) (citing 21 U.S.C. § 337 and observing that the FDCA "does not provide a cause of action for private parties suing for civil damages").

The district court's holding suggests that Congress intended section 387p's preservation and savings clauses to impede basic principles of conflict preemption even where actual conflict between the state and federal government's approaches exist. But, although "the balance of power struck by the TCA allows state and local governments to opt out of the market, . . . it doesn't allow them to otherwise set parameters for that market that conflict with the federal government's [approach]." *R.J. Reynolds Tobacco Co. v. Cnty. of Los Angeles*, 29 F.4th at 560. It is antithetical to the principle of federal preemption that the existence of a preservation or savings provision would require the toleration of such a conflict. *See Geier*, 529 U.S. at 871 ("Why . . . would Congress not have wanted ordinary pre-emption principles to apply where an actual conflict with a federal objective is at stake?"). For this fundamental reason, "[t]he [Supreme] Court has thus refused to read general 'saving' provisions to tolerate actual conflict . . . in "frustration-of-purpose" cases[.]" *Id*. at 873-74. This Court should do likewise here.

Congress tasked the FDA with reducing disease and death caused by traditional tobacco products, and in so doing, the FDA made the "deliberate choice" to leave

35

many unauthorized ENDS products on the market by deferring enforcement of 21 U.S.C. § 387j. *Arizona*, 567 U.S. at 405. Wisconsin's indirect enforcement of 21 U.S.C. § 387j through section 995.15 is "inconsistent with federal policy and objectives." *Id.* The Supreme Court "has repeatedly 'declined to give broad effect to saving clauses where doing so would upset the careful regulatory scheme established by federal law.'" *Geier*, 529 U.S. at 870 (quoting *United States v. Locke*, 529 U.S. 89, 106 (2000)). So, too, should this Court decline to read 21 U.S.C. § 387p to tolerate this conflict.

    **4.**    The TCA's legislative history also suggests that Congress did not intend section 387's preservation and savings clauses to render section 337(a) inapplicable to the FDCA's requirements for tobacco products. When Congress was considering the TCA, twenty-nine members of Congress co-sponsored an amendment that would have created a separate statutory scheme outside of the FDCA (including an agency outside of the FDA) to regulate tobacco products. *See* H.R. Rep. No. 111-58, pt. 1, at 6 (Mar. 2009). That separate statutory scheme—the Youth Prevention and Tobacco Harm Reduction Act (the "THR Act")—included a provision substantively identical to 21 U.S.C. § 337(a) and a preservation clause virtually identical to 21 U.S.C. § 387p(a)(1). *See* H.R. 1261, THR Act § 104 ("All proceedings for the enforcement, or to restrain violations, of this Act shall be by and in the name of the United

States."), THR Act § 119 ("Preservation of State and Local Authority") (Mar. 3, 2009).

The sponsors of the THR Act understood that their proposed legislation's preservation clause (section 119) did not nullify their proposed legislation's section 337(a)-like provision (section 104). That understanding makes sense because one provision of an act cannot be read as implicitly nullifying another provision of that same act. *See*, *e.g.*, *South Carolina v. Catawba Indian Tribe*, 476 U.S. 498, 510 n.22 (1986) ("It is an elementary canon of construction that a statute should be interpreted so as not to render one part inoperative.") (internal quotation and citation omitted); *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) ("It is our duty to give effect, if possible, to every clause and word of a statute, . . . rather than to emasculate an entire section.") (internal quotations and citation omitted). So, it stands to reason that Congress did not intend the TCA's virtually identical preservation and savings clauses—21 U.S.C. § 387p(a)(1) and (a)(2)(B)—to implicitly exclude state tobacco product regulations from the scope of section 337(a).

**5.** Courts "assume that Congress is aware of existing [case] law when it passes legislation." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696-97 (1979)). So, the Court must assume that Congress was aware of case law interpreting the FDCA—including *Buckman* and its progeny—when it enacted the TCA in 2009.

As noted above, in *Buckman*, the Court held that section 337(a) impliedly preempted the plaintiffs' state law claims because "the existence of [the FDCA] was a critical element" of the defendant's purported state law duties. 531 U.S. at 353. The Court reasoned that such "claims inevitably conflict with the FDA's responsibility" to enforce the FDCA "consistently with the [Agency's] judgment and objectives." *Id.* at 350; *accord Nathan Kimmel v. DowElanco,* 275 F.3d 1199, 1206 (9th Cir. 2002) (stating that the "key factor identified by the Supreme Court in concluding that Buckman's claims were pre-empted was that 'the existence of [the FDCA was] a critical element in [the] case'"). Therefore, when Congress passed the TCA in 2009, it knew that section 337(a) could impliedly preempt any state law if the existence of the TCA was a critical element of a person's duties under that state law. Had Congress wanted to avoid implied preemption of state law duties or claims that depend on the existence of the TCA, it would have amended section 337.

The district court rejected this conclusion, reasoning that "*Buckman*'s implied preemption test may well have prompted Congress to include these very Preservation and Savings Clauses as a directive that States *retain* the authority to enact and enforce additional requirements for the sale of tobacco products." App.A. 19. Given the two options, the district court applied the presumption against preemption, stating that it "must assume 'that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest

purpose of Congress.'" *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

The presumption against preemption, however, is not a blanket rule; the presumption does not apply where, as here, the state regulation compels compliance with a federal requirement in an area that states have not historically regulated. *See e.g.*, *Locke*, 529 U.S. at 108 ("[A]n 'assumption' of nonpreemption is not triggered when the State regulates in an area where there has been a history of significant federal presence."); *Transource Pa., LLC v. Defrank*, No. 24-1045, ___ F.4th ___ 2025 U.S. App. LEXIS 22972, * 33 (3d Cir. Sept. 5, 2025) ("This presumption against preemption does not apply in all cases, however. It does not apply 'where state regulation has traditionally been absent.'") (quoting *Farina*, 625 F.3d at 117).

Premarket review of tobacco products—the federal requirement set forth in 21 U.S.C. § 387j with which section 995.15 indirectly compels compliance—has never been an area of significant regulation by the states. An exhaustive search for cases discussing state regulation of premarket tobacco requirements yields no results apart from the instant case and recent parallel district court cases from this year similarly challenging state ENDS directory legislation in Iowa, North Carolina, and Kentucky. As the district court noted, "the inclusion of [the preservation and savings] clauses in § 387p was a deliberate choice by Congress not to 'broadly jettison[] the longstanding tradition of states and localities' role in the regulation of *sales* of

tobacco products when it enacted the TCA in 2009." App.A. 12 (quoting *R.J. Reynolds Tobacco Co. v. Cnty. of Los Angeles*, 29 F.4th at 549-50) (collecting cases) (emphasis added). But Congress' language preserving states' historic power to regulate the *sales* of tobacco products in 21 U.S.C. § 387p should not be stretched beyond recognition into carte blanche authorization for states to impose regulations that conflict with federal policy. *See Farina*, 625 F.3d at 131 ("clarification of intent not to preempt some state law is not a statement of intent to permit actual conflicts between state and federal law.").

Although a presumption against preemption may be appropriate as applied to the states' historic regulation of tobacco product *sales*, its application to state requirements that compel premarket review of tobacco products—an area never historically regulated by the states—is inappropriate and unsupported by the relevant caselaw. A harmonious reading of 21 U.S.C. §§ 337(a) and 387p together reveals that Congress intended for the regulation of premarket review to be reserved for the federal government. Congress did not give free rein to state governments to indirectly enforce the TCA's premarket review requirements. That conclusion would necessarily allow states to "second-guess[]" the FDA's enforcement discretion "based on a disagreement with the federal actor's reasons" for enforcing or not enforcing the FDCA against regulated entities. *Transource Pa., LLC*, 2025 U.S. App. LEXIS at *38-39. This "poses an obstacle to the full achievement of federal

purposes," *MD Mall Assocs. v. CSX Transp., Inc.*, 715 F.3d 479, 495 (3d Cir. 2013), a conflict that Congress surely did not intend the FDCA to tolerate.

**6.**     In its opinion, the district court also disagreed with the notion that "merely relying on the FDCA in part in regulating tobacco products means that [a State restriction] is enforcing it." App.A. 16. But this overlooks that a manufacturer's failure to comply with 21 U.S.C. § 387j's premarket application requirements necessarily means that an ENDS product will not qualify for the directory established by section 995.15. Thus, the Wisconsin statute indirectly compels compliance with the FDCA's premarket review requirements. Whether the retail sale of tobacco products violates section 995.15 is conditioned upon the product manufacturers' compliance with FDA marketing authorization standards. The former cannot be extricated from the latter. Indeed, without its language relying on the FDCA's premarket authorization requirements, section 995.15 is nonsensical. For the same reason, the district court's conclusion that section 995.15 merely places an "*additional* burden on tobacco product manufacturers hoping to sell their ENDS products in Wisconsin, which is exactly the power preserved to the States by [section 387p(a)(1)]" is incorrect. App.A. 17.

     In allowing States to impose sales restrictions that are "in addition to, or more stringent than" the TCA's requirements, Congress did not intend to allow states to enforce the TCA's requirements themselves. Section 337(a) impliedly preempts

section 995.15's directory-related restrictions. Appellants are likely to succeed on the merits of their appeal.

## II. The Wisconsin Department of Revenue's Enforcement of Section 995.15 Irreparably Harms Appellants.

"Irreparable harm occurs when the 'legal remedies available to the movant are inadequate.'" *A.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 774 (7th Cir. 2023); *DM Trans, LLC v. Scott*, 38 F.4th 608, 618 (7th Cir. 2022) ("Harm is irreparable if legal remedies available to the movant are inadequate, meaning they are seriously deficient as compared to the harm suffered."). Moreover, to be entitled to a preliminary injunction, a party need not show that every possible modification to their business is likely to be unsuccessful to prove irreparable harm. *See Galvin v. New York Racing Ass'n*, 70 F Supp. 2d 163, 170 (E.D.N.Y. 1998) ("[T]he loss of business need not be total, so long as it is so great as to seriously compromise the company's ability to continue in its current form.") (emphasis added); *VanDerStok v. Garland*, 633 F. Supp. 3d 847, 855 (N.D. Tex. 2022) ("But even costs that are recoverable from another source (*e.g.*, by cost-shifting to customers or offering alternate products) may constitute irreparable harm where the loss threatens the very existence of the movant's business" (cleaned up)).

As noted above, enforcement of section 995.15 started on September 1, 2025. As predicted in the declarations filed in support of Appellants' motion for preliminary injunction, J.A. 254-66, 869-74, 880-82, 888-891, 912-13, and as

evidenced in the declarations submitted in support of Appellants' motion for an injunction pending appeal, J.A. 1130-33, Appellants are suffering substantial economic harm, including drastic reductions in their sales that have them operating at a loss, J.A. 1130-33. The district court found that enforcement of section 995.15 would "significantly limit the ability for businesses to operate gainfully and consumers to get ENDS products of their choice," and that "switching to carrying the few industry products that are currently compliant with [section] 995.15 is not feasible." App.A. 21. Continued enforcement by the WDOR will force the retailer Appellants to close their businesses. For preliminary injunction purposes, such harm is irreparable per se. *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (observing that harm that would force a plaintiff to shut down its business while litigation is pending is irreparable and not subject to an adequate remedy at law).

The district court also found that "[p]erhaps most importantly, Appellants' harm is further exacerbated by the fact that the defendant, a Wisconsin state agency, is immune from claims for money damages under the doctrine of sovereign immunity, should § 995.15 ultimately be found preempted." App.A. 21; *Smith v. City of Hammond, Ind.*, 388 F.3d 304, 307 (7th Cir. 2004) (observing that in some cases "a defendant's immunity from damages liability might constitute irreparable harm entitling the plaintiff to preliminary relief"). The irreparable harm Appellants are

already experiencing will only be prolonged and exacerbated absent an injunction pending appeal.

### III. The Balance of Harms and Public Interest Favor Enjoining Enforcement of Section 995.15.

As noted above, because the government is the defendant, the balance of equities and public interest factors "merge." *Nken v. Holder*, 556 U.S. 418, 435, (2009). Because Appellants have established a strong likelihood of success on the merits of their implied preemption claim and are suffering irreparable harm, the balance of equities and the public interest factors weigh in their favor. *ACLU v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012) (noting that "if the moving party establishes a likelihood of success on the merits, the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional"); *Bank One, N.A. v. Gattau*, 190 F.3d 844, 847 (8th Cir. 1999) (holding that where a plaintiff proves that a state law is preempted and irreparably harms the plaintiff, "the question of harm to the State and the matter of the public interest drop from the case" because the plaintiff "will be entitled to injunctive relief no matter what the harm to the State, and the public interest will perforce be served by enjoining the enforcement of the invalid provisions of state law").

On the other hand, Defendant is not threatened with any irreparable harm because at worst, should an injunction be entered, the State would simply not collect

revenue from fines resulting from the enforcement of section 995.15 while the injunction was in effect. "The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest." *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978); *Whole Woman's Health All. v. Hill*, 937 F.3d 864, 875 (7th Cir. 2019) ("Enforcing a constitutional right is in the public interest."). Therefore, the balance of equities and public interest also favor an injunction pending appeal.

## CONCLUSION

For the foregoing reasons, the Court should vacate the district court's September 5, 2025 order and direct the district court to enter an order preliminarily enjoining enforcement of section 995.15.


Dated: September 19, 2025               Respectfully submitted,

                                        THOMPSON HINE LLP

                                        By:   /s/ Eric N. Heyer
                                          Eric N. Heyer
                                          1919 M Street, NW, Suite 700
                                          Washington, DC 20036
                                          Phone: 202.331.8800
                                          Fax: 202.331.8330
                                          Eric.Heyer@ThompsonHine.com

                                          *Counsel for Plaintiffs-Appellants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2025, I caused a true and correct copy of the foregoing Appellants' Brief to be filed with the Clerk's Office of the United States Court of Appeals for the Seventh Circuit using the CM/ECF system and to thereby be served via electronic mail on all counsel of record.


                                               <u>      /s/ Eric N. Heyer        </u>

                                               Eric N. Heyer

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that Appellants' Brief complies with the type-volume requirement set forth in Federal Rule of Appellate Procedure 32 and Circuit Rule 32(c). The word count feature found in Microsoft Word reports that the Brief contains 10,998 words, excluding the items exempted under Fed. R. App. P. 32(f).

The Appellants' Brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32 because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, size 14 font.


_____/s/ Eric N. Heyer_____
Eric N. Heyer

No. 25-2565

# In the United States Court of Appeals for the Seventh Circuit

WISCONSINITES FOR ALTERNATIVES TO
SMOKING AND TOBACCO, INC., *et al.*,

*Plaintiffs-Appellants*,

v.

DAVID CASEY,

*Defendants-Appellees*.

On Appeal from the U.S. District Court for the Western District of Wisconsin
(Hon. William M. Conley; No. 3:25-cv-00552)

**APPELLANTS' CIR. R. 30 APPENDIX**

Eric N. Heyer, *Lead Counsel*
THOMPSON HINE LLP
1919 M Street, NW, Suite 700
Washington, DC  20036
Phone: 202.331.8800
Fax: 202.331.8330
Eric.Heyer@ThompsonHine.com

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

Order Denying Plaintiffs' Motion for Preliminary Injunction ...............App.A. 0001

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

Wisconsinites for Alternatives to
Smoking & Tobacco, Inc., et al.,

                          Plaintiffs,                    OPINION AND ORDER

         v.                                                  25-cv-552-wmc

David Casey,
Secretary of the Wisconsin Department
of Revenue, in his official capacity,
                          Defendant.

---

A coalition of manufacturers, distributors, retailers, and users of electronic nicotine delivery systems (known as "ENDS" or "e-cigarettes") filed this action against defendant David Casey, in his official capacity as Secretary of the Wisconsin Department of Revenue, seeking declaratory and injunctive relief barring enforcement of Wis. Stat. § 995.15. That statute prohibits the sale of all electronic vapor devices in Wisconsin unless already deemed compliant with federal regulations by the Federal Food, Drug, and Cosmetic Act ("FDCA"), a timely application is still pending FDA review, or the product contains hemp but no nicotine. Before the court is plaintiffs' motion for preliminary injunction (dkt. #15), arguing § 995.15 violates the Supremacy Clause of the United States Constitution because the FDCA impliedly preempts any state law that relies on its regulations to establish liability. For the reasons explained below, as well as briefs and supplemental briefs, affidavits and testimony provided at the hearing on August 1, 2025, plaintiffs' motion will

be denied.[1]

BACKGROUND

**A.  History of the FDCA and Tobacco Product Regulation**

The FDCA was enacted in 1938 and has long required the approval of the Food and

Drug Administration ("FDA") before certain products could be introduced into the market.

Pub. L. No. 75-717, 52 Stat. 1040 (1938).  In 2009, the FDCA was amended by the Family

Smoking Prevention and Tobacco Control Act ("TCA"), 123 Stat. 1776 (2009).[2]  This

extended the FDA's regulatory authority to "new tobacco products" and required them to

have approval before being sold in the market.  *Id*.[3]  When first introduced, the FDA did

not treat e-cigarettes as "new tobacco products"; however, the FDA changed course in

2016, declaring them subject to the provisions of the TCA.  81 Fed. Reg. 29028-29044

(2016).  In 2022, Congress amended the TCA, further clarifying that "tobacco products"

encompass nicotine from "any source," not just tobacco.  Pub. L. No. 117-103, 136 Stat.

789 (2022) (codified at 21 U.S.C. § 321(rr)(1)).

For a company to receive FDA approval for a "new tobacco product," it must submit

---

[1] Defendant moved to strike plaintiffs' supplemental brief (dkt. #70), arguing that plaintiffs have raised new arguments and did not ask for this relief.  (Dkt. #71.)  Because defendant also exceeded this court's briefing orders and failed to show how he was prejudiced by plaintiffs' supplemental brief, however, his motion is DENIED and both sides' supplemental briefing have been considered by the court.

[2] The TCA also amended the Federal Cigarette Labeling and Advertising Act ("FCLAA"), 15 U,S, §§ 1331-1340, governing health warning labels and advertising for cigarettes, including an express preemption preventing states from regulating cigarette advertising.  15 U.S.C. § 1334.

[3] "New tobacco products" are any tobacco products that were not "commercially marketed in the United States as of February 15, 2007, and later modifications to tobacco products that were available as of that date.  21 U.S.C. § 387j(a)(1)

2

a premarket tobacco product application ("PMTA"). 21 C.F.R. § 1114.1(a). If the PMTA demonstrates that the product meets all applicable requirements, the FDA will issue a "marketing granted order." § 1114.5. "A new tobacco product may not be introduced or delivered for introduction into interstate commerce ... until the FDA has issued" a marketing authorization or similar order. *Id.* However, due to the size of the e-cigarette market at the time it became subject to the TCA, the FDA announced deferred enforcement of the TCA against manufacturers and retailers who met specific market and application deadlines. To date, only thirty-nine e-cigarette products have received the necessary market approval. *See* https://www.accessdata.fda.gov-scripts/searchtobacco/ (last visited August 8, 2025).

Initially, the FDA announced it would exercise discretion for unauthorized products until August 2019, so long as the product was on the market by August 8, 2016, and the manufacturer submitted a PMTA by August 9, 2018. Over the next few years, the enforcement discretion period changed several times. In 2020, the FDA announced its "final" extension, delaying enforcement until September 2021 for e-cigarettes products that had been on the market before August 8, 2016, and whose manufacturer had submitted a PMTA by September 9, 2020. Since the expiration of that order in September 2021, the FDA has made enforcement decisions regarding unauthorized e-cigarettes on a case-by-case basis. Since October 2019, the FDA has received PMTAs for 26,636,962 e-cigarettes products and, as of March 31, 2025, has made determinations on 26,139,873 products, leaving approximately 497,000 different e-cigarette product applications pending.

3

**App.A. 0003**

In 2023, the FDA considered a citizen petition from an R.J. Reynolds affiliate asking to exclude enforcement against e-cigarettes that were on the market by August 8, 2016, and had pending PMTAs submitted before September 9, 2020, which were still under review or were the subject of ongoing litigation against the FDA.[4]  However, the FDA and United Sates International Trade Commission did not adopt this policy.

## B. Wisconsin's Regulation of Electronic Vaping Devices

With the passage of Wis. Stat. § 995.15, on December 6, 2023, Wisconsin created its own regulatory framework directing the Wisconsin Department of Revenue ("DOR") to maintain a directory of all electronic vaping devices, including ENDS, that are eligible for sale in Wisconsin.  Wis. Stat. § 995.15(6).  Enforcement of Wis. Stat § 995.15 began on September 1, 2025.  *Id.*  To be placed on the directory, an ENDS manufacturer must annually certify to DOR that its product:  (1) "has received a marketing authorization or similar order for the electronic vaping device from the U.S. food and drug administration pursuant to 21 USC 387j"; (2) was on the market in the U.S. "as of August 8, 2016," an associated PMTA was submitted to the FDA "on or before September 9, 2020," and "either the application remains under review" by the FDA or "a final decision on the application has not otherwise taken effect"; or (3) "contains hemp … and does not contain nicotine."[5]  Further, manufacturers and retailers who sell vaping products in Wisconsin that are *not*

---

[4] This did not allow for any non-tobacco-derived nicotine ENDS because they were not subject to the FDCA until April 2022 and would not have needed to submit a PMTA prior to September 9, 2020.

[5] Wis. Stat. § 995.15(2).  Products containing hemp as defined by Wis. Stat. § 94.55(1), but not nicotine, are subject to enforcement beginning September 1, 2026.  Wis. Stat. § 995.15(2m).

**App.A. 0004**

listed on the directory are subject to fines and other civil penalties and have "engage[d] in an unfair and deceptive trade practice in violation of s. 100.20." Wis. Stat. § 995.15(9) and (10). In addition to administrative and judicial actions for injunctive or other relief brought the Wisconsin Department of Agriculture, Trade and Consumer Affairs or Wisconsin Department of Justice, "[a]ny person suffering a pecuniary loss because" of a violation of Wis. Stat. § 100.20 may commence a civil suit to recover twice that "loss, together with costs, including a reasonable attorney fee." Wis. Stat. § 100.20(3)-(6).

On June 30, 2025, almost 19 months after Wis. Stat. § 995.15 was signed into law, and two months before its enforcement was set to begin plaintiffs filed this action arguing that Wis. Stat. § 995.15 violates the Supremacy Clause of Article IV and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. On July 8, 2025, plaintiffs filed their motion for preliminary injunction, solely relying on their preemption theory. The motion was fully briefed and the court heard oral arguments on August 1, 2025, because Wisconsin's directory was not published until August 1, 2025, the court granted plaintiffs permission to submit supplemental declarations providing a more granular review of the harm they may suffer.

### C. Plaintiffs' Claimed Harm

Generally, the retail plaintiffs, some of whom were subjected to cross-examination during the court's preliminary injunction hearing, represent that if they are limited to selling the 190 products currently listed on the Wisconsin DOR directory, they will face a significant loss of business and revenues, likely causing them to downsize or completely close their businesses. Specifically, Visfot Inc., an ENDS retailer, opines it will lose over

5

**App.A. 0005**

80% of its revenue from previous years because less than 3% of its ENDS revenue, which accounts for approximately 83% of its total revenue, is currently on the directory.  Without these products, it anticipates a reduction in its core business will also reduce sales of other products, such as snacks or apparel.  Similarly, Johnny Vapes, an ENDS retailer, has product inventory over $200,000 that will no longer be subject for sale, neither does Vapes carry nor anticipate carrying any of the products currently listed in the directory that could lead to substantial sales.  Further, Supply Plus, an ENDS retailer, anticipates that its revenue will decline by over 65% -- not accounting for the reduction in sales of non-vaping products that customers purchase when they visit their store -- and has an inventory of ineligible products currently valued at $155,000.  Central City Vapes, an ENDS retailer, also attested that a shift to directory-approved products would likely cause a cessation in operations, because it would be competing directly with gas stations and convenience stores that receive significant discounts for reserving shelf space and selling traditional tobacco products.

In addition, Distro Guys, an ENDS wholesale distributor, represents that 85% of their sales came from disposable ENDS products not on the current version of Wisconsin's directory and only 9.5% of their revenue came from products on Wisconsin's directory. Moreover, Triton, a manufacturer of tobacco and non-tobacco-derived nicotine for use in refillable ENDS products, timely filed PMTAs for its non-tobacco-derived, nicotine products when they became subject to the FDCA in 2022.  However, Under Wis. Stat. § 995.15, Triton also represents that all of its products would be banned from sale in Wisconsin until the FDA approves their applications.  Finally, without access to specific

6

**App.A. 0006**

ENDS products not yet eligible for the directory, individual, retail customer plaintiffs represent that they are much more likely to revert to traditional combustible cigarettes, which would damage their health.

OPINION

Plaintiffs seek a preliminary injunction enjoining defendants from enforcing Wis. Stat. § 995.15.  Generally, a preliminary injunction is an extraordinary and drastic remedy, and it is never awarded as a matter of right. *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008); *Boucher v. Sch. Bd. of the Sch. Dist. of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998).  Thus, the moving party has the burden to show that it is likely to succeed on the merits and would suffer irreparable harm absent the injunction. *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021).  If successful, the moving party must also show that granting an injunction weighs in the public interest.  *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  When balancing these equities, a moving party's delay in requesting a preliminary injunction further weighs against their request. *Benisek v. Lamone*, 585 U.S. 155, 160 (2018).

Here, plaintiffs argue that:  they are likely to succeed on their claim that Wis. Stat. § 995.15 is preempted by federal law; enforcement of the statute will cause irreparable harm to their businesses and, in the case of retail consumers, to their health; and a balance of harms and the public interests weigh in favor of granting the requested injunction.  In response, defendant argues that:  plaintiffs lack standing to bring their claims essentially seeking to protect actions already prohibited by federal law; and on the merits, the FDCA expressly preserves to states authority to regulate nicotine product sales in the manner set

7

**App.A. 0007**

forth in Wis. Stat. § 995.15.

## I. Article III Standing

The court must begin by addressing defendant's argument that plaintiffs lack Article III standing, since if correct, federal subject matter jurisdiction would be lacking to proceed at all. Article III of the United States Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see* U.S. Const. art. III, § 2, cl. 2. To have Article III standing, therefore, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Moreover, to establish an injury in fact, plaintiffs "must show that [they] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Defendant argues that plaintiffs' claim is not seeking a remedy for a legally protected interest given that the sale of unauthorized ENDS products is already prohibited under the FDCA. However, as highlighted by other courts, this technical application of *Lujan's* requirement for a "legally protected interest" would lead to anomalous results. *E.g., Iowans for Alternatives to Smoking & Tobacco, Inc. ("IAS&T") v. Iowa Dep't of Revenue*, 781 F. Supp. 3d 724, 734 (S.D. Iowa 2025). First, the interest is not akin to the illegal sale of narcotics as suggested by defendant. Most notably, unlike a drug dealer, plaintiffs have a legitimate basis for believing that the FDA will continue its practice of allowing the ENDS market to

8

grown, except perhaps on a case-by-case basis.  Indeed, under the FDA's current practice,

plaintiffs arguably are engaged in legal economic activities.  As a result, Wis. Stat. § 995.15

practically interferes with plaintiffs' reliance on a federal non-enforcement policy in a way

that will meaningfully harm them, including in the form of lost sales, customers, goodwill,

obsolete and sunk inventory, as well as imminent loss of access to unique products that

avoid combustible cigarettes.  Because these harms would flow directly from defendant

enforcing Wis. Stat. 995.15, and may be redressed by a decision in plaintiffs favor, the

court is satisfied that plaintiffs have alleged and established a concrete harm sufficient for

Article III standing.[6]

## II. Implied Preemption

As for the merits, plaintiffs argue that Wis. Stat. § 995.15 is impliedly preempted

by the FDCA, specifically 21 U.S.C § 337(a). "A fundamental principle of the Constitution

is that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*,

530 U.S. 363, 372 (2000) (citing U.S. Const., art. VI, cl. 2).  The scope of a statute's

preemptive effect, however, is guided by congressional intent: "the purpose of Congress is

the ultimate touchstone" in every pre-emption case. *Altria Grp., Inc. v. Good*, 555 U.S. 70,

76 (2008) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).  Moreover, because

the states are independent sovereigns, the Supreme Court has "long presumed that

---

[6] As the U.S. District  Court for Iowa pointed out in *IAS&T*, denying plaintiffs standing based on imperfect compliance with federal law could further allow states to avoid many preemption challenges simply by asserting noncompliance with the federal standard at issue, a result that would frustrate our federalist structure.  *Id.* at *7; *see also* V*apor Tech. Ass'n v. Wooten*, No. 4:25-cv-00076-M-RJ, 2025 WL 1787420, *3 (E.D.N.C. June 27, 2025) (same).

9

Congress does not cavalierly pre-empt state-law causes of action." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). This is particularly so where Congress has "legislated ... in a field which the States have traditionally occupied," giving rise to "the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Id*.

Preemption can be express or implied. *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984). Where, as here, an implied preemption claim is made, the court must consider whether "the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Id*. If the state law would "prevent or frustrate" this federal objective, it is "nullified" by the Supremacy Clause. *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 873 (2000). An implied preemption inquiry is "a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000). As a result, Congress' intent must be interpreted through the language it used in the FDCA, as well as the information available when Congress enacted and later amended the statute, including the historic regulatory authority over tobacco products, which is a field that the States traditionally occupied.

### A. The Interplay of Sections 337 & 387p of Title 21

The dispositive question here is whether statutory language and context demonstrate that Congress intended to preempt States' historic authority to prohibit sales of tobacco products, even if relying in part on the FDCA. That question is primarily answered by two sections of the FDCA, as amended by the TCA, in 21 U.S.C. §§ 337(a)

**App.A. 0010**

and 387p.  To begin, in 1938, when Congress first enacted the FDCA, it included § 337, which states that all proceedings to enforce or restrain violations of the FDCA "shall be by and in the name of the United States."  This section has been recognized by the Supreme Court to evidence Congress's intent to preempt the States' authority to enforce provisions of the FDCA.  *See Buckman Co. v. Plaintiff's Legal Comm.* 531 U.S. 341, 352 (2001) (§ 337(a) is "clear evidence that Congress intended that the [Medical Device Amendment ("MDA")] be enforced exclusively by the Federal Government").  As discussed below, many courts have applied this principle from *Buckman* to hold that state claims incorporating the FDCA are preempted.

However, unlike other areas regulated by the FDCA, when Congress enacted the TCA in 2009, it expressly reserved substantial regulatory authority to the States.  *See* 21 U.S.C. § 387p.  This section is comprised of three clauses.  First, the so-called "Preservation Clause" states that:

> except as provided in paragraph (2)(A), nothing in this subchapter ... shall be construed to limit the authority of a ... State or political subdivision of a State ... to enact, adopt, promulgate, and enforce any law, rule, regulation, or other measure with respect to tobacco products that is in addition to, or more stringent than, requirements under this subchapter ... relating to or prohibiting the sale, distribution, possession, exposure to, access to, advertising and promotion of, or use of tobacco products by individuals of any age, information reporting to the State, or measures relating to fire safety standards for tobacco products.

11

**App.A. 0011**

21 U.S.C. § 387p(a)(l). [7]   Second, the Preservation Clause in turn is limited by the "Preemption Clause," which prohibits state regulations "different from or in addition to," TCA requirements "relating to tobacco product standards, premarket review, adulteration, misbranding, labeling, registration, good manufacturing standards, or modified risk tobacco products." § 387p(a)(2)(A).   Third, Congress included a "Savings Clause" to reiterate that the Preemption Clause "does not apply to requirements relating to the sale, distribution, possession, information reporting to the State, exposure to, the advertising and promotion of, or use of, tobacco products by individuals of any age[.]" § 387p(a)(2)(B).

Courts have found that the inclusion of these three clauses in § 387p was a deliberate choice by Congress not to "broadly jettison[ ] the longstanding tradition of states and localities' role in the regulation of sales of tobacco products when it enacted the TCA in 2009." *R.J. Reynolds Tobacco Co. v. Cnty. of Los Angeles*, 29 F.4th 542, 549-50 (9th Cir. 2022); *see also R.J. Reynolds Tobacco Co. v. City of Edina*, 60 F.4th 1170 (8th Cir. 2023)*; Nat'l Ass'n of Tobacco Outlets, Inc. v. City of Providence*, 731 F.3d 71 (1st Cir. 2013); *U.S. Smokeless Tobacco Mfg. Co. LLC v. City of New York*, 708 F.3d 428 (2d Cir. 2013).   Even so, analyzing these clauses together leaves room to argue about Congress's actual intent to preempt

---

[7] At oral argument and in their supplemental brief, plaintiffs also assert that the language "nothing in this subchapter" requires a holding that § 337(a), a section outside of the subchapter, is not preempted by § 387p.  However, this contradicts the Supreme Court's instruction that "a specific policy embodied in a later federal statute should control [the court's] construction of the [earlier] statute, even though it ha[s] not been expressly amended." *United States v. Estate of Romani*, 523 U.S. 517, 530-531 (1998) (collecting cases).  Moreover, for reasons discussed above, the language is § 387p does just that.

States' laws, especially relying in part on requirements of the TCA in enacting law that prohibit tobacco product sales.

While § 337(a) does state that enforcement of the FDCA shall only be "by and in the name of the United States," the TCA also includes an express statement that preserves to the States authority to prohibit tobacco products sales by enacting laws with requirements that are "in addition to or more stringent than" the TCA. Thus, at minimum, Congress intended that States use the TCA as a floor for further restrictions on tobacco product manufacturers from accessing their markets. The language of the Savings Clause also suggests Congress's apparent intent that States retain the ultimate authority to prohibit the sale of a tobacco product altogether, regardless of its compliance with TCA provisions. *See Cnty. of Los Angeles*, 29 F.4th at 560 ("the better understanding [of § 387p] is that Congress intended to allow the federal government the sole authority to set tobacco product standards, while retaining for states and localities their longstanding authority to say: 'not here'").

In opposition, plaintiffs argue that consideration of the Preservation and Savings Clauses of § 387p is a red herring because neither "bar the ordinary working of conflict preemption principles." *Geier v. American Honda Motor Co.*, 529 U.S. 861, 869 (2000). However, this is merely a reminder that "ordinary pre-emption principles" apply when analyzing these clauses, including review of the entire statutory context. *Buckman*, 531 U.S. at 352. Plaintiffs also argue that this case merely requires a straightforward application of § 337(a) preemption, just as in *Buckman*, but this ignores material differences in the relevant statutory language and context.

13

**App.A. 0013**

In *Buckman*, there was no clause preserving state authority to regulate disclosures during the FDA's medical device approval process or saving it from preemption.  Moreover, the Supreme Court noted that "policing fraud against federal agencies is hardly a field the States have traditionally occupied," *Id.* at 347 (quotations omitted), emphasizing that "[s]tate law fraud-on-the-FDA claims would inevitably conflict with the FDA's responsibilities." *Id.* at 350.  Indeed, the Court emphasized that "complying with the FDA's regulatory regime in the shadow of 50 states' tort regimes would dramatically increase the burdens facing applicants -- burdens not contemplated by Congress in enacting the FDCA and the MDA." *Id.*

In contrast, tobacco product regulation has long been subject to state authority; Congress expressly sought to preserve the States authority by including § 387p; and the language of 387p affirmatively grants States the authority to enact and enforce laws that impose additional, even *more* stringent, requirements on manufacturers before their tobacco products may be sold in an individual state.  *See Cnty. of Los Angeles*, 29 F.4th at 561 ("Given that the TCA does not mandate that certain flavors must remain available for sale, and expressly preserves local authority to enact sales regulations more stringent than the TCA, the County's sales ban does not stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress expressed in the TCA.") (quotations omitted).

Plaintiffs cites a number of other opinions holding that state law claims depending on violations of the FDCA were preempted, but these cases are similarly distinguishable on critical facts:  none involve tobacco products or the TCA's Preservation and Savings

14

**App.A. 0014**

Clauses. *See Nexus Pharmaceuticals, Inc. v. Central Admixture Pharmacy Services, Inc.*, 48 F. 4th 1040 (9th Cir. 2022) (drugs); *Novo Nordisk Inc. v. Live Well Drugstore, LLC*, No. 23-cv-808, 2025 U.S. Dist. LEXIS 17792 (M.D. Fla. Jan. 30, 2025) (drugs); *Regan v. Sioux Honey Association Cooperative*, 921 F. Supp. 2d 938 (E.D. Wis. 2013) (food); *Loreto v. Proctor & Gamble Co.*, 515 Fed. Appx. 576 (6th Cir. 2013) (drugs).  With respect to those few cases cited by plaintiff that *do* involve the regulation of tobacco products, most simply apply *Buckman* without analysis of the effect of the Preservation and Savings Clauses.  *See State ex rel. Attorney General Dave Yost v. Elevate Smoke, LLC*, No. A-2403034, 2025 WL 579637 (Ohio Com. Pl., Hamilton Cnty. Feb. 20, 2025); *State ex rel. Attorney General Dave Yost v. Orville Tobacco and Vape Shop*, No. 2024-CVC-H-0327, 2025 WL 432823 (Ohio Com. Pl., Wayne Cnty. Feb. 5, 2025); *State ex rel. Attorney General Dave Yost v. Central Tobacco*, No. 24-CV-H-0064, 2024 WL 4626167 (Ohio Com. Pl. Delaware Cnty. Oct. 29, 2024); *Yimam v. Myle Vape, Inc.*, No. 2019 CA 008050 B, 2020 WL 13614925 (D.C. Super. June 11, 2020).  Having failed to examine the relevant textual evidence for Congress' intent, the court is unpersuaded that the FDCA preempts regulation of tobacco products by the states. *See Crosby*, 530 U.S. 363, 373 (2000) (implied preemption analysis requires "examining the federal statute as a whole.").

Plaintiffs do cite *one* case that applies *Buckman* in the way they suggest, however, even its analysis is unpersuasive.  In *IAS&T*, as here, the Iowa District Court was asked to decide whether an Iowa statute's dependence on federal authorization status, "place[d] Iowa in the position of making its own judgments about which federal requirements to enforce and how stringently to enforce them . . . interfere[ing] with the methods by which

15

**App.A. 0015**

the federal statute was designed to reach [its] goal." *Id.* at *12 (quotations omitted). However, that reasoning appears to be in direct conflict with the express language used by Congress in the Preservation Clause, which expressly authorizes States to enact and enforce laws that are "in addition to, or more stringent than, requirements established under [the TCA]." Additionally, this court disagrees with the conclusion in *IAS&T* that merely relying on the FDCA in part in regulating tobacco products means that it is enforcing it. Regardless, a violation of the FDCA is not itself actionable basis for the DOR to initiate proceedings against the producers, distributors, retailers and customers of tobacco producers. *See Vapor Tech. Ass'n v. Wooten*, No. 4:25-cv-00076-M-RJ, 2025 WL 1787420, *5 (E.D.N.C. June 27, 2025) (finding similar state law conditioning certification on FDA authorization was not enforcing the FDCA). Rather, action may only be initiated by the sale of a product not on the Wisconsin directory, which includes TCA compliant and noncompliant products.

Because the power to enact and enforce the same or *additional* sales requirements is expressly preserved to the States after adopting the TCA, at least so far as tobacco product requirements are created by state law, the question remains what, if anything, Congress intended in limiting enforcement of the FDCA to the federal government in § 337(a). With this in mind, the court turns to whether Wis. Stat. § 995.15 imposes a permissible prohibition under the provisions of the FDCA or is impliedly preempted.

### B. Section 995.15

As noted above, Wis. Stat § 995.15 requires manufacturers of electronic vaping devices to make one of the following certifications to the DOR to avoid daily forfeitures:

16

(1) the device received a marketing authorization or similar order from the FDA pursuant to 21 USC 387j; (2) the device was on the market as of August 8, 2016, an associated PMTA for that device was submitted to the FDA on or before September 9, 2020, and that application remains under review or a final decision has not otherwise taken effect; or (3) the device contains hemp and does not contain nicotine.  On its face, this requirement would certainly appear to place an *additional* burden on tobacco product manufacturers hoping to sell their ENDS products in Wisconsin, which is exactly the power preserved to the States in the TCA.  21 U.S.C. § 387p(a)(l).  Nevertheless, plaintiffs argue that by relying on the FDCA provisions for tobacco products, § 995.15 "would effectively allow a state to write section 337(a) out of the FDCA and render it inoperative for any state-law tobacco-product restriction that could be characterized as a 'sales requirement.'"  (Dkt. #47 at 19.)  However, Congress explicitly left the authority to States to enforce legislation imposing additional sales requirements.  To find a sales requirement preempted because it made sales more difficult for tobacco product manufacturers simply because it acknowledged a floor set by the federal government would appear to ignore Congress' intent that each state have final authority on what tobacco products may be sold in its marketplace.

Of course, plaintiffs argue that this interpretation would make the Preemption Clause a nullity because any of its provisions could be ignored by characterizing it as a "sales requirement."  This interpretation ignores the already limited scope of the Preemption Clause, which only restricts States from "establish[ing] or continu[ing] in effect with respect to tobacco products any requirement which is different from, or in

17

**App.A. 0017**

addition to, any requirements under the [TCA]." 21 U.S.C. § 387p(2)(A). Logically, this allows states to continue or establish requirements that are the same as the TCA in both the listed and unlisted categories.[8]  Regardless, the Savings Clause states that the Preemption Clause "does not apply to requirements relating to the sale . . . of tobacco products," suggesting that the Preemption Clause was never intended to limit a States' ability to enact sales restrictions on the sale of tobacco products, regardless of the form they take.  This is especially compelling given that, as plaintiffs acknowledge, States have the flexibility to outright ban all tobacco products, as well as limiting bans to specific categories.

Still, plaintiffs argue that by stating in the Preservation Clause that "nothing in [the TCA], or rules promulgated under [the TCA] shall be construed to limit the authority of" a State to adopt laws "prohibiting the sale, distribution, possession, exposure to, access to, advertising and promotion of, or use of tobacco products *by individuals of any age*," § 387p(a)(1) (emphasis added), Congress merely intended to preserve a State's right to adopt a minimum age for use of tobacco products different from that set by the federal government.  While this may be part of Congress's intent, it is also wholly consistent with Wis. Stat. § 955.15, which prohibits the sale of certain tobacco products to individuals of any age.

---

[8] In their supplemental brief, plaintiffs argue that Wis. Stat § 995.15 creates new obligations for ENDS manufacturers that solely operate intrastate and are not subject to the "FDCA's premarket review requirements."  However, in making this argument, plaintiffs seemingly concede that Wisconsin's regulation of these businesses cannot be preempted because, as they argue, there is no federal law regulating them.  The other alternative, that these entities are free of any regulation compelling premarket review, is not tenable with the realities of this heavily regulated market.

**App.A. 0018**

Finally, plaintiffs argue that because the *Buckman* opinion had been issued eight years before the TCA was enacted, Congress was aware of the Supreme Court finding that the FDCA, as amended by the TCA, impliedly preempted any "fraud-on-the-FDA" claims under state law for medical devices. Specifically, plaintiffs further argue in light of this history, that if Congress had intended the Preservation and Savings clauses to limit § 337(a)'s implicit preemption effect, it would have included express language similar to §337(b), which allows state enforcement of FDCA food provisions under certain circumstances. Of course, this argument cuts both ways, since *Buckman*'s implied preemption test may well have prompted Congress to include these very Preservation and Savings Clauses as a directive that States *retain* the authority to enact and enforce additional requirements for the sale of tobacco products, something the *Buckman* court found was not true for medical devices. Given these two options, this court must assume "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice*, 331 U.S. at 230. Based on the full text of the TCA and FDCA, therefore, the court finds it unlikely that Congress intended to preempt the States' authority to enact and enforce laws restricting the sale of tobacco products that rely in part on TCA requirements, such as Wis. Stat. § 995.15, especially where it obviously knew how to do so expressly for labelling and advertising of tobacco products in § 1334. Accordingly, the court also finds plaintiffs have not met their

19

**App.A. 0019**

burden to demonstrate a reasonable likelihood of prevailing on the merits and are not

entitled to preliminary injunctive relief.    *See Winter*, 555 U.S. at 20.[9]

## III.  Irreparable harm

On the other hand, plaintiffs have established a reasonable likelihood that they will

suffer irreparable harm if Wis. Stat. § 995.15 takes effect illegally.  As an initial matter,

plaintiffs need not show that every possible modification to their businesses is likely to be

unsuccessful to prove irreparable harm. *See Galvin v. New York Racing Ass'n*, 70 F. Supp. 2d

163, 170 (E.D.N.Y. 1998) ("[T]he loss of business need not be total, so long as it is so

great as to seriously compromise the company's ability to continue in its current form.")

(emphasis added); cf. *Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 38 (2d Cir.

1995) ("Where the loss of a product will cause the destruction of a business itself or

indeterminate losses in other business [because, for example, the product attracted

customers who make purchases of other goods while buying the product in question] . . . a

preliminary injunction [is] appropriate."); *VanDerStok v. Garland*, 633 F. Supp. 3d 847,

855 (N.D. Tex. 2022) ("But even costs that are recoverable from another source (e.g., by

cost-shifting to customers or offering alternate products) may constitute irreparable harm

where the loss threatens the very existence of the movant's business" (cleaned up)).

Here, plaintiffs have presented substantial evidence demonstrating that Wis. Stat.

§ 995.15 will significantly limit the ability for businesses to operate gainfully and

---

[9] Because the Seventh Circuit has advised that absent a finding of a reasonable likelihood of success on the merits, "district courts [should still] examine, if only briefly, all four preliminary injunction considerations," the court will turn to the remaining considerations. *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 730 (7th Cir.1998).

**App.A. 0020**

consumers to get ENDS products of their choice.  In particular, retailers have attested to the fact that a niche market for specialized ENDS products for tobacco consumption comprise most of their revenue from August 1, 2024, to July 31, 2025, and would be prohibited once Wis. Stat. § 995.15 takes effect.  Additionally, plaintiffs provide compelling evidence to believe that the loss of customers coming into retail stores to purchase products no longer eligible for sale will similarly reduce cross-sales of their non-tobacco products, such as snacks and apparel.  Plaintiffs have also presented evidence that switching to carrying the few industry products that *are* currently compliant with Wis. Stat. § 995.15 is not feasible because other competitors in the industry -- such as gas stations and convenient stores -- already sell those same products at discounts under arrangements with manufacturers reserving shelf space for traditional combustible cigarettes.  The likely ripple effects of these lost sales on wholesalers and manufacturers of niche ENDS products, as well as the ultimate consumers, seem equally likely.

Perhaps most importantly, plaintiffs harm is further exacerbated by the fact that the defendant, a Wisconsin state agency, is *immune* from claims for money damages under the doctrine of sovereign immunity, should § 995.15 ultimately be found preempted.

## IV.  Balance of Harms and Public Interest

Plaintiffs acknowledge that in cases where a party's constitutional rights are claimed to be threatened, the court's finding as to the parties' likelihood of success on the merits drives the "balance of harms" analysis, "because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional." *ACLU v. Alvarez*, 679 F.3d 583, 589-90 (7th Cir. 2012).  This sentiment is echoed by

21

**App.A. 0021**

defendant, who argues that a state suffers irreparable injury whenever its validly enacted laws are enjoined. *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers); *see also Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018).

Accordingly, since this court has concluded that plaintiffs have failed to demonstrate a reasonable likelihood of success on the merits, they have also failed to demonstrate that the balance of harms and public interest weigh in favor of enjoining state enforcement of Wis. Stat. § 995.15.

Indeed, plaintiffs unexplained delay in bringing suit until just before the statute takes effect offsets the arguably limited harm in further extending enforcement for a few more months given the state's repeated extensions of the date enforcement would begin. Regardless, the court sees little likelihood of the state or even a private citizen ramping up enforcement before plaintiffs will have an opportunity to seek emergency relief from the Seventh Circuit.

ORDER

IT IS ORDERED that plaintiffs' Motion for Preliminary Injunction, dkt. #15, is DENIED.

Entered this 5th day of September, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

22

**App.A. 0022**

## CIR. R. 30 CERTIFICATE

Pursuant to Cir. R. 30(d), I hereby certify that the foregoing appendix to the appellants' brief contains all of the materials required by Cir. R. 30(a), and there are no relevant items subject to Cir. R. 30(b) to be included in the foregoing appendix to the appellants' brief.

__/s/ Eric N. Heyer_____
Eric N. Heyer

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2025, I electronically filed the foregoing with the Clerk of Court for the U.S. Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system, causing all counsel of record to be served by the same.

__/s/ Eric N. Heyer_____
Eric N. Heyer